UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GREAT LAKES INSURANCE SE,

    Plaintiff/Counterdefendant

vs.                                               CASE NO. 4:20-cv-40020-DHH

MARTIN ANDERSSON,

    Defendant/Counterplaintiff

### MOTION TO COMPEL RESPONSES TO DEPOSITION QUESTIONS AND PRODUCTION OF DOCUMENTS AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Fed. R. Civ. Proc. 26, 30, 34 and 37 and Mass. Dist. Ct. Local R. 37.1, and D. Mass. L. R. 7.1, and by and through his undersigned counsel, Defendant Martin Andersson hereby moves this court to compel responses to questions asked of GLI's corporate representative in his deposition and to compel the production of documents.

Fed. R. Civ. Proc. 26(b)(1) allows the parties to federal lawsuits to:

> Obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. Proc. 26(c) provides a procedural mechanism for any party or person to seek a protective order if that person believes the information being sought is not properly discoverable. No Motion for Protective Order was filed by GLI regarding any aspect of discovery in this case.

Fed. R. Civ. Proc. 37 allows for the filing of a motion to compel a discovery response where a witness fails to answer a question asked under Rule 30 or a party fails

to produce documents requested pursuant to Fed. R. Civ. Proc. 34. Fed. R. Civ. Proc. 34 allows a party to "serve on any other party a request within the scope of Rule 26(b)." A subpoena to a party is not required for a party to seek the production of documents. A privilege log is required for parties asserting privileges in refusing to produce documents:

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party **must**: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed -- and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."

Fed. R. Civ. Proc. 26(b)(5)(A)(emphasis added).

Through this motion, Andersson seeks: 1) responses to certain deposition questions which were also asked in his interrogatories; and 2) the production of documents which appear to have been withheld from production by GLI.

**1.      Responses to three questions asked of Beric Anthony Usher in his deposition taken on May 20, 2021:**

During his deposition, Mr. Usher failed to answer due to a lack of preparation or was instructed not to answer three questions.

> Question:   Do you have any idea, in generalities or specifically, how many policyholders insured by Great Lakes are residents of Massachusetts?
> Answer      No. We don't record -- we record the location of the vessel, not insured. We have a record, but we don't maintain the records in that way.

(Usher at 142/6-11). A compilation of transcript excerpts relevant to this motion are attached as Ex. 1. With respect to this question, Mr. Usher was designated as GLI's corporate representative and, among other things, was asked to come prepared to respond to questions about the answers to interrogatories provided by GLI. Pursuant to

Fed. R. Civ. Proc. 30(b)(6), "[t]he persons designated must testify about information known or reasonably available to the organization." In addition to his role as GLI's Rule 30(b)(6) witness, Mr. Usher is the person who signed the interrogatory responses. (See Ex. 2, Notice of Deposition and Ex. 3, GLI's Answers to Interrogatories). This question lines up with Andersson's Interrogatory No. 8, to which Great Lakes raised the following objection: "Great Lakes Insurance SE objects that this interrogatory is irrelevant, burdensome, harassing and not calculated to lead to the discovery of admissible evidence." As the Court can see, Mr. Usher's response acknowledged that the information was in Great Lakes' possession to respond, but states they don't maintain the records that way.

Counsel next asked a question that tracked the language of Andersson's Interrogatory 9:

| | |
|---|---|
| Question: | What is the amount of premium revenue paid by residents of the Commonwealth of Massachusetts for policies of insurance issued by or on behalf of Great Lakes? |
| Answer | Again – |
| MR. GOLDMAN: | Again, I'm directing – |
| Answer | -- (inaudible) – |
| MR. GOLDMAN: | -- Mr. Usher to not answer.[1] |

---

[1] It is Andersson's position that no objections raised in Mr. Usher's deposition should be acknowledged by the Court. The "Mr. Goldman" who defended this deposition was Steven E. Goldman, not Michael Goldman. Michael Goldman filed and is lead counsel in this matter. Michael Goldman did not appear at the deposition until after all testimony was complete. After the deposition questioning was ended, counsel asked about whether the deposition of GLI's claims manager Sarah Delacey-Simms noticed for the next morning would go forward, at which time Michael Goldman refused on the record to produce Ms. Delacey-Simms, GLI's Marine Claims Manager who was assigned to handle Andersson's claim, for deposition. (See Usher at 189/8 – 190/21).  Steven Goldman, his father, frequently represents GLI in matters filed in the federal courts of Florida, where Ms. Niemeyer is admitted to practice law and has represented clients adverse to Steven Goldman's clients, as well as in other states. Given the fact that Steven Goldman has maintained an office in Brookline, MA for many years, Ms. Niemeyer assumed without question that he was a member of this Court's bar and of the Massachusetts Bar. She did not object to his appearing without prior notice to defend Mr. Usher at his Rule 30(b)(6) deposition knowing that he had a longstanding relationship with Mr. Usher and assuming he was a member of this Court's Bar, and of course also the founding member of Goldman and Hellman. Since then, it has come to counsel's attention that Steven E. Goldman is neither a member of the Massachusetts Bar nor of the bar of this Court. There is no Steven E. Goldman listed online either

(Usher, 141/20 to 142/3). Based upon the response to the prior question it is apparent that Great Lakes could have provided a response to the interrogatory (or provided the responsive information to its corporate representative) but it refused to respond. In response to a follow-up question, Mr. Usher claimed that it would not be possible to provide that information. It is unfathomable that an insurer would be unaware of the amount of premiums paid by residents of a particular state, if for no other reason than to be in compliance with the insurance and tax laws of the states where it is selling insurance. We are no longer in the days of paper recordkeeping. At worst, GLI should be able to create some computer inquiries to compile the information sought by these interrogatories.

Finally, counsel asked a question that tracked the language of Andersson's Interrogatory 10:

| | |
|---|---|
| Question: | What is the amount of premium revenue paid for policies of insurance issued by or on behalf of Great Lakes for vessels whose port of call is located in the Commonwealth of Massachusetts? |
| MR. GOLDMAN: | Same objection. Same instruction to Mr. Usher not to answer. |
| Question: | And I'm going to ask the same follow-up; is it possible for you to calculate the premium revenue based on the location where the vessels are – are housed? |
| Answer: | No. |

---

with this Court or the Massachusetts Bar, nor does Mr. Goldman claim on his website to be admitted to practice in this Court or in Massachusetts. See Search Results and Website Information attached as Ex. 4. There are some people named Goldman with the first name spelled Stephen or Steven who are not the Steven Goldman who defended Mr. Usher's deposition. Those gentlemen are located in different places and employed in different areas of practice than Steven Goldman of Goldman and Hellman. He has not entered an appearance in this matter other than defending Mr. Usher's deposition, and most importantly has not complied with this Court's requirement of applying for pro hac vice status and paying a related fee pursuant to Local Rule 85.5.3(e).

(Usher, 143/4-15). In his response to the first of the objected-to questions, Mr. Usher stated that the records were kept by the location of the vessel, not the address of the insured. By that statement, it should not be hard to respond to this question. This, as is true for the information sought by the first two questions above, is information that is completely under the control of Great Lakes and can only be obtained through Great Lakes. It is relevant to this matter to assess volume of business written for Massachusetts residents and Massachusetts vessels so it can be decided whether the volume of business being conducted by GLI in Massachusetts merits a consideration of damage being caused to Massachusetts insureds by Great Lakes' business practices.

It should be stated to the Court that Andersson chose not to move to compel responses to these interrogatories at the time when the responses were received. There is no rule prohibiting a party from seeking the same or similar information from a witness in deposition. Until Mr. Usher's deposition was taken, Andersson did not yet have evidence to support a business practice claim for damage to GLI insureds other than Mr. Andersson and a handful of Florida insureds. Testimony given by Mr. Usher in his deposition, however, provided solid support to the theory that it is an entrenched business practice of GLI, probably affecting numerous Massachusetts residents, to sue its insureds first and deny claims later:

| | |
|---|---|
| Question | Is it a practice of Great Lakes to file suit prior to informing their insured that a claim would be denied? |
| Answer | Simultaneous. |
| Question | Simultaneous. Is that a -- is that the normal procedure that's followed by Great Lakes? |
| Answer | Yes.  Well, I say "yes," I mean, we don't always, but frequently, we issue a dec action, a declaratory action under Rule 98 simultaneously with a denial letter. Sometimes, it's just a denial letter. |
| Question | Why do you do that? |

    Answer                Because we would rather be the plaintiff and control the forum as regards jury.

(Usher at 56:18-57:7). Andersson's counterclaim raises a claim pursuant to Mass. Gen. L. Ch. 93A § 9(1), which applies to a unique instance of conduct. Usher's admission of a corporate policy to violate Mass. Gen. L. Ch. 176D §§ 3(9)(e) and (n) raised the corporate conduct to a level which may support not only a claim under Mass. Gen. L. Ch. 93A § 9(1) but also under Mass. Gen. L. Ch. 93A § 9(2).  That section may be raised in circumstances where ""the use or employment of the unfair or deceptive act or practice has caused similar injury to numerous other persons similarly situated …." Mass. Gen. Laws Ch. 93A § 9(2). Given Mr. Usher's response about the company's frequent practice of suing before denying claims, Andersson should be given the opportunity to obtain the information needed to assess whether it would be appropriate to amend the action to sue on the behalf of others as well as himself, and to obtain discovery related to that claim.

**2.    The production of all notes, memoranda or other written communications missing from GLI's production of documents related to the handling of the claim. Specifically, Andersson made the following requests for which it is clear, assuming any modicum of professionalism in GLI's claims handling, items are missing or are likely to be missing:**

    **REQUEST FOR PRODUCTION NO. 2:** All communications written by You, received by You, or shared among You related to The Loss and/or The Claim which are the subject of this lawsuit.

    Response:  See the documents already produced as part of Plaintiff Great Lakes Insurance SE's Rule 26 disclosures.

    **REQUEST FOR PRODUCTION NO. 4:**  All Documents memorializing information obtained by You in your investigation of The Claim that have not yet been produced in this lawsuit.

    Response:  None at this time. As discovery is ongoing, Plaintiff Great Lakes Insurance SE reserves the right to supplement this response at a later time.

    **REQUEST FOR PRODUCTION NO. 5:** All handwritten or electronic notes taken by You regarding the underwriting of the policy, the

investigation of the claim, the decision to sue the insured, or the decision to deny the claim.

Response:  Plaintiff Great Lakes Insurance SE **objects that this request demands production of documents which are protected by the attorney-client privilege and the work product doctrine**. Subject to that objection, see the documents already produced as part of Plaintiff Great Lakes Insurance SE's Rule 26 Disclosures.

**REQUEST FOR PRODUCTION NO. 6:** All correspondence, notes, emails, faxes, letters, records, memoranda, and all other documents, in whatever format (print, electronic, or  otherwise) related to the cause of the loss of the 2000 47' Catana vessel named "MELODY" that  is identified on the declarations page of Policy No. CSRYP/172119 and which is the subject of the  above captioned litigation.

Response:  See the documents already produced as part of Plaintiff's Great Lakes Insurance SE's Rule 26 Disclosures

**REQUEST FOR PRODUCTION NO. 7:**  All  communications  to  or  from anyone at the law firm of Goldman & Hellman regarding the Claim prior to January 27, 2020.

Response:  Plaintiff Great Lake Insurance SE **objects that this request demands production of documents which are protected by the attorney-client privilege and the work product doctrine**. Subject to that objection, none.

**REQUEST FOR PRODUCTION NO. 10:**  All and all communications between You and any other person or entity regarding the Vessel, the Claim, or the insured, Martin Andersson.

Response:  See the documents already produced as part of Plaintiff Great Lakes Insurance SE's Rule 26 Disclosures.

**REQUEST FOR PRODUCTION NO. 11:**  Any and all communications between You and any representative of WR Hodgens Marine  Insurance Inc. related to the Vessel, the Claim, or Martin Andersson.

Response:  See the documents already produced as part of Plaintiff Great Lakes Insurance SE's Rule 26 Disclosures.

**REQUEST FOR PRODUCTION NO. 17:**  Any and all communications which you contend constitute a denial of coverage for the Claim.

Response:  See the documents already produced as part of Plaintiff Great Lakes Insurance SE's Rule 26 Disclosures.

A full copy of GLI's responses to Andersson's First Request for Production is attached as

Ex. 5. As can be seen in the bolded responses, GLI only objected in its responses to two

of these requests on the basis of attorney client privilege or the work product doctrine (or at all for that matter). GLI did not produce a privilege log detailing the documents it claimed to object to producing at that time.  No documents were produced beyond those provided as GLI's Rule 26 disclosures until it became apparent through Mr. Usher's testimony that documents had to be missing from the production.

Through Mr. Usher's testimony, it was learned that Great Lakes utilizes electronic mail for all communications related to claims:

| | |
|---|---|
| Answer: | Any internal conversations or whatever as regards to file with Concept Special Risks, because it is easier to send an e-mail, because it's easier to store an e-mail, because it's already in electronic form, rather than making a handwritten note, scanning it and putting it on the file, so, therefore, that's why we communicate by e-mail. |
| Question: | Okay.  So it's your business practice to do all these things electronically through e-mail so that it's maintained that way, correct? |
| Answer: | That's correct.  And especially -- |
| Question: | And -- |
| Answer: | especially, of course, for the bulk of this period of this file or a prolonged period of this file, we of -- the office was closed because of the COVID pandemic, so nobody was in the office from the 17th of March onward, so all communication were done by e-mail. |

(Usher at 102/11 to 103/4).  The claim file produced to Andersson consisted of one .pdf file with a total of 158 pages.[2] In his deposition Mr. Usher indicated he had "190 files" most of which would have multiple pages.  See Usher at 23/23 to 24/8. That alone implied

---

[2] In filing this motion, Counsel will attempt to upload the produced file as Exhibit 6. Due to its large size, however, it likely will not be possible to do so, in which case counsel seeks guidance from the Court as to the most convenient way for the Court to receive the documents.

that numerous documents must have been missing from the production, especially considering the 158-page claim file contained multiple copies of the policy and reports which were each well over ten pages long, and numerous multi-page email chains.  Mr. Usher separately stated, regarding the production:

| | |
|---|---|
| Answer: | (Deponent viewing document.)  Well, I'm -- I'm quite happy to stipulate that -- that you have the underwriting file, because I can't think of a reason, other than attorney correspondence, because my – I mean, I can't go by number of -- because, of course, in our claims file, we have all the correspondence with the attorney, so, to give you an idea, ignore the number of pages, I have 189 documents in my claims file -- |
| Question: | Mm-hmm. |
| Answer: | -- but the bulk of that is going to be correspondence with the attorney. All right.  So all I can -- what I can stipulate is that our entire claims file was sent to Mr. Goldman, and I'm absolutely confident that Mr. Goldman forwarded all those documents with the exception of items that were subject to attorney-client privilege, all those documents would've been sent to you. |

(Usher at 19:7-20:1).

Subsequent to the attorneys' conference regarding this motion to compel, GLI produced what it represented to be its entire claim file. There were 71 documents produced, including numerous emails in their original format, as opposed to the .pdf printouts produced previously. All but 12 of the documents had already been produced in GLI's Rule 26 production. Notably, the only intra-office communication that was produced was a communication forwarding the marine surveyor's invoice for payment. The production included a February 21, 2020 email from Ms. Delacey-Simms of Concept to Steve Sensibar at GLI forwarding a collection of attached documents about the claim and asking for his approval to seek a legal opinion. After a few emails regarding the selection

of counsel, an email was sent to Steven Goldman on February 26, 2021 attaching the same documents that had been shared with Mr. Sensibar and containing a link to a Dropbox folder containing what was represented to be the relevant claims and underwriting files.[3] On February 27, 2020, this lawsuit was filed and on March 2, GLI issued a denial letter to Andersson. That denial letter, which was signed by Sarah Delacey-Simms and is in Andersson's possession because it was mailed to him, has never been produced as part of the claim file, even after the recent conference of counsel.

Fed. R. Civ. Proc. 45, related to subpoenas, requires that "a person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must … describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Fed. R. Civ. Proc. 45(e)(2).

The Dist. Mass. Local Rules are more specific, requiring:

> When a claim of privilege is asserted in objection to any document request, or any subpart thereof, and any document is not provided on the basis of that assertion, **the attorney asserting the privilege shall identify in the objection the nature of the privilege that is being claimed with respect to each such document**. If the privilege is being asserted in connection with a claim or defense governed by state law, the attorney asserting the privilege shall indicate the particular privilege rule that is being invoked.

Dist. Mass. Loc. R. 34.1(e)(emphasis added). In this case, all the claims are governed by State law.[4] No privilege log was produced by GLI in this case until June 10 after the

---

[3] It should be noted these appear to be the same claims and underwriting files produced by counsel in GLI's Rule 26 production, and do not include any "correspondence with the attorney" as described by Mr. Usher.

[4] The question of what law governs the various claims in this dispute is the subject of a pending motion and Andersson will not reargue that question here. Regardless of the law ultimately applied by this Court, both parties agree that each of the claims and counterclaims in this case will be decided under either New York or Massachusetts law.

parties conferred regarding discovery issues, and the privilege log that was produced, attached hereto as Ex. 6, describes in general terms only seven email communications exchanged on February 26 and 27, 2021 which counsel represented the entirety of the privileged communications "from the moment the matter was referred." The first of those was produced by Plaintiff with its production of additional documents finally received by Andersson's counsel on Saturday, June 12. That February 26, 2020 initial email to Steven Goldman had numerous attachments, all of which were already produced and clearly not privileged, as well as a link to a dropbox folder containing a claim file and an underwriting file which appear to be the same as were produced by Plaintiff with its Rule 26 initial disclosures. Two of the emails described in the privilege log do not include counsel as either the author or the recipient; these appear to be communications between the claims handlers at Concept and Steve Sensibar at GLI. They allege a basis for privilege as "attorney-client privilege and work product doctrine" and describe the documents as "Goldman & Hellman's legal coverage analysis," The same description used for almost all the documents described on the privilege log. Most importantly, although there were numerous documents withheld based upon Mr. Usher's deposition testimony, these seven descriptions over a two-day period were the ONLY documents described in a privilege log, and that one provided only under threat of a motion to compel. The descriptions do not indicate the number of pages contained in each document, a descriptor which would help to understand the gap between what was produced and the significantly larger file Mr. Usher described. Most importantly, the descriptions are insufficiently detailed to provide the basis for any real assessment of the privilege claim.

In the context of Fed. R. Civ. Proc. 45(d)(2), the First Circuit Court of Appeals stated:

> The operative language is mandatory and, although the rule does not spell out the sufficiency requirement in detail, courts consistently have held that the rule requires a party resisting disclosure to produce a document index or privilege log. *See, e.g., Bregman v. Dist. of Columbia,*182 F.R.D. 352, 363 (D.D.C. 1998); *First American Corp. v. Al-Nahyan,*2 F.Supp.2d 58, 63 n. 5 (D.D.C. 1998); *see also Avery Dennison Corp. v.Four Pillars,* 190 F.R.D. 1, 1 (D.D.C. 1999) (describing privilege logs as "the universally accepted means" of asserting privilege claims in the federal courts); *cf. Vaughn v. Rosen,*484 F.2d 820 (D.C.Ct.App. 1973) (articulating the justifications for requiring privilege logs in the context of the FOIA). A party that fails to submit a privilege log is deemed to waive the underlying privilege claim.*See Dorf Stanton Communications, Inc. v. Molson Breweries,*100 F.3d 919, 923 (Fed. Cir. 1996) (holding that failing "to provide a complete privilege log demonstrating sufficient grounds for taking the privilege" waives the privilege). Although most of the reported cases arise in the context of a claim of attorney-client privilege, the "specify or waive" rule applies equally in the context of claims of work product privilege. *See, e.g., Smith v. Conway Org., Inc.,*154 F.R.D. 73, 76 (S.D.N.Y. 1994).

*In re Grand Jury Subpoena*, 274 F.3d 563, 575-76 (1st Cir. 2001); see also Stamps v. Town of Framingham & Paul K. Duncan, 38 F. Supp. 3d 134 at 141-142 (D. Mass. 2014). It is settled law that the failure to produce a privilege log results in a waiver of the claimed privileges. Unlike many of the published decisions involving the question of whether a party's privilege log descriptions were adequate, in this case no privilege log of any kind was produced with regard to any documents subsequent to February 27 or prior to February 26. In conferring with counsel regarding the creation of a privilege log, GLI's counsel requested that attorney-client communications dated after the retention of Goldman & Hellman as coverage counsel for the filing of this lawsuit did not need to be listed on a privilege log. Andersson's counsel agreed that there was no need for a privilege log to be produced for communications with Goldman and Hellman after suit was

filed. Counsel did not agree, however, to the withholding of all internal or other communications after that date without a privilege log. It is clear from the paucity of communications set forth in the privilege log as compared to Mr. Usher's testimony that his file contained 180 documents the bulk of which he described as communications with counsel, and the fact that virtually no internal communications or even the denial letter were ever produced, that key documents have either not been produced by GLI to Andersson or have not been described on a privilege log, or both.

Among the documents that have been produced, there is no documentation regarding communications with witnesses other than marine surveyor Mr. Ball's notes from a meeting with Mr. Andersson which were produced as a result of the recent conference prior to filing this motion. There is no documentation of any effort to obtain the GPS units that were on the boat. There is no documentation of any attempt to call or documenting any conversation or even email communications with Mr. Naranjo, the crew member who was on the vessel or with any other witness Great Lakes should have been aware of and would have been expected to contact.

To summarize the timeline, Great Lakes and its counsel would have this Court believe: 1) that its claims department employees did not discuss the claim amongst themselves or, except for the transmittal of background information to their marine surveyors and two resulting reports, with their assigned marine surveyors; 2) that the first involvement of counsel in this matter was February 26 when the email was sent to Steven Goldman attaching hundreds of pages of documents and seeking an opinion about the claim yet, with that abundance of documentation, Michael Goldman was prepared to file this lawsuit the very next day.

Given that there is no internal communication about the claim and a bulk of the claim file Mr. Usher described consisted of communications with counsel, it is highly likely that "counsel," either at the Goldman and Hellman firm or elsewhere, may have been acting in a claims handling capacity prior to the February 26 request for a "legal opinion." If that were the case, communications related to the claim are not protected by the attorney-client privilege.

> It is undisputed that in insurance cases, communications with an attorney are not protected under the attorney-client privilege or work-product doctrine, where the attorney performs the role of a claims adjuster and does not provide legal advice. *See*, e.g., *OneBeacon Ins. Co. v. Forman Intern., Ltd.*, No. 04-cv-2271(RWZ), 2006 WL 3771010, at *6 (S.D.N.Y. Dec. 13, 2006) ("OneBeacon cannot assert the attorney-client or work-product privilege in an effort to avoid producing the OneBeacon documents prepared in the ordinary course of an insurer's business."); *Chi. Meat Processors, Inc. v. Mid-Century Ins. Co.*, No. 95-cv-4277, 1996 WL 172148, at *3 (N.D. Ill. April 10, 1996) ("In the insurance context, to the extent that an attorney acts as a claims adjuster, claims process supervisor, or claims investigation monitor, and not as a legal advisor, the attorney-client privilege does not apply.").

*Certain London Mkt. Co. Reinsurers v. Lamorak Ins. Co.*, CIVIL ACTION No. 18-10534-NMG, at *9-10 (D. Mass. Oct. 13, 2020). This could explain why GLI has been so cagey about disclosing the identity of its claims adjuster, even responding to Andersson's Interrogatory No. 5 seeking the identity of the claims adjuster responsible for the claim, "None."

Given the failure to comply with the discovery rules and the inadequacy of the privilege log ultimately provided, ALL communications related to this claim should be ordered to be produced immediately and an opportunity given for counsel to reopen depositions or take the appropriate depositions to authenticate those documents and to ask questions related to them.

WHEREFORE, Defendant Andersson hereby requests an order compelling the following:

1) Responses to Andersson's Interrogatories 8, 9, and 10 either in written form as an interrogatory response or as testimony through its corporate representative.

2) ALL communications related to the Andersson claim, whether intra-office or with outside persons or entities, INCLUDING privileged documents as any privilege has been waived through GLI's failure to provide a sufficient privilege log to assess the claims of privilege.

3) An order allowing Andersson to re-open depositions or to take the depositions of witnesses revealed in any documents produced as a result of this motion.

4) the cost of filing this motion including attorney's fees, and any further sanction the Court considers appropriate.

### **CERTIFICATION OF LOCAL RULE 7.1 AND 37.1 COMPLIANCE**

The undersigned counsel hereby certifies pursuant to Mass. Dist. Ct. Local R. 7.1 and 37.1, she has conferred with Michael Goldman, counsel for Plaintiff, on multiple occasions by email as well as over the telephone on Wednesday, June 9 for 13 minutes. The parties discussed three categories of discovery: 1) The production of handwritten notes which were acknowledged to exist by witness Andrew Ball in his deposition and shown to counsel on the Zoom call deposition; 2) Intra-office or other communications which were acknowledged to be kept in the ordinary course of business by Mr. Usher but were not contained in the claim file as it was produced to Andersson; and 3) Responses to a set of questions posed to Mr. Usher in his deposition as Rule 30(b)(6) witness which mirrored interrogatories that had not been answered under objection. The result of the conference were that: a) GLI agreed to produce, and has produced, Mr. Ball's notes; b) GLI agreed to produce all non-privileged communications from the claim file and a privilege log, some but demonstrably not all of which GLI has produced; and c) GLI refused to provide answers to the deposition questions absent a court order. With regard to the privilege log, GLI's counsel raised the issue of limiting the log to items prior to the appointment of counsel on February 27, 2021. While discussing the matter, counsel for GLI represented there were seven emails from the moment the matter was referred to Goldman and Hellman, and that a privilege log would be produced.

_____
Michelle Niemeyer
Counsel for Movant Martin Andersson

Respectfully submitted this 14th day of June, 2021.

*Michelle Niemeyer*
Michelle Melin Niemeyer
Counsel for Defendant Martin Andersson
Michelle M. Niemeyer, P.A.
244 Biscayne Blvd. #3009
Miami, FL 33132
Telephone:   (305) 443-1818
Email:       mniemeyer@paymyclaim.com

Harvey Heafitz, Esq.
Attorney for Defendant Martin Andersson
Davigian, Grillo & Semple LLP
365 Boston Post Road, Suite 200
Sudbury, MA 01778
Telephone:   (978) 443-3773
Email:       Harvey@dgslawllp.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this **14th day of June, 2021**, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing is being served this day upon all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*Michelle Niemeyer*
Michelle Melin Niemeyer
Counsel for Martin Andersson