UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
IN ADMIRALTY

|  |  |  |
|---|---|---|
| GREAT LAKES INSURANCE SE, | ) | |
| | ) | CIVIL ACTION |
| Plaintiff, | ) | |
| | ) | NO. 4:20-40020-TSH |
| v. | ) | |
| | ) | |
| MARTIN ANDERSSON, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS (Docket No. 30) ON DEFENDANT'S THIRD COUNTERCLAIM (Docket No. 9)

**JUNE 21, 2021**

This case involves a dispute about coverage under a marine insurance policy and, specifically, whether the owner of a catamaran is indemnified with respect to a 2019 sailing accident that destroyed the insured vessel. The plaintiff-insurer ("GLI") has filed an action in admiralty for declaratory judgment to determine coverage and the owner-insured Martin Andersson ("Andersson") has filed counterclaims for breach of contract (Count I), equitable estoppel (Count II), and Massachusetts bad faith insurance claim settlement practices, in violation of M.G.L. c. 176D §3(9)(b), (d), and (e) (Count III). (Docket No. 9 at 4-22).

Before the Court is GLI's motion to dismiss Count III, Andersson's bad faith insurance counterclaim, pursuant to Fed. R. Civ. P. 12(c). (Docket No. 30).

1

## Background

*The Policy*

GLI brought this declaratory judgment action under admiralty law against Andersson, its insured.

On December 21, 2018, Andersson, then living in Massachusetts, purchased a $365,000 marine insurance policy from GLI ("Private and Pleasure Yacht Insuring Agreement" or "Policy") for his catamaran, *The Melody*. (Ex. A at 2, Docket No. 1-2). The Policy included two limitations which are relevant here. First, Andersson warranted that he would maintain *The Melody* in a seaworthy condition at all times during the Policy term; any breach would void the Policy from its inception. (*Id*. at 13). Second, Andersson warranted that he would not sail beyond Florida, the Bahamas, and the Caribbean Sea (excluding Cuba, Columbia, Haiti, and Venezuela) or farther than 150 miles offshore. (*Id*. at 3).

The Policy also included a choice of law provision:

**"11. Service of Suit, Choice of Law and Forum**

**"It is hereby agreed that any dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the State of New York."**

(Docket No. 1-2 at 4).

*The Stranding*

On December 16, 2019, *The Melody* sustained catastrophic damage when she hit a breakwater and became stranded in open water near the Port of Boca Chica in the Dominican Republic. (Comp. ¶ 10, Docket No. 1). GLI refused to cover the cost of salvage, repair, or

2

replacement on the grounds that Andersson had failed to keep the *Melody* in seaworthy condition because the VHF radio transmitter broke, and that Andersson had sailed outside the bounds of the Policy's navigational limits. (¶¶ 12-14). It filed this lawsuit seeking a declaration that it has no obligation to reimburse Andersson for any losses arising out of *The Melody*'s stranding.

*GLI's Action and Andersson's Counterclaims*

Andersson's Answer asserted three state law counterclaims: (i) breach of contract; (ii) equitable estoppel; and (iii) failure to act reasonably promptly with respect to claims; refusing to pay claims without a reasonable investigation; and failure to approve or deny coverage after a reasonable period of time; in violation of M.G.L. c. 176D §3(9)(b), (d), and (e). (Docket No. 9). Andersson's ch. 176D counterclaim is premised on his allegations that GLI's (or its agent's) failure to retrieve *The Melody*'s Garmin GPS unit from the vessel after the stranding; GLI's failure to act promptly upon Andersson's communications; GLI's strategic delay in information Andersson his claim had been denied so that its attorneys could first file suit; and GLI's misrepresentations concerning whether Anderson needed to file a claim form, constituted statutorily unfair insurance claim settlement practices. (Docket No. 9, ¶¶ 118-27).

GLI argues that Andersson's ch. 176D counterclaim is barred by the Policy's choice of law clause because it arises under Massachusetts law rather than New York law.

**<u>Legal Standard</u>**

A Rule 12(c) motion for judgment on the pleadings "'is treated much like a Rule 12(b)(6) motion to dismiss.'" *Perez–Acevedo v. Rivero–Cubano,* 520 F.3d 26, 29 (1st Cir. 2008). The Court views the facts in the light most favorable to the nonmovants, drawing all reasonable inferences in their favor. *Aponte-Torres v. University of Puerto Rico*, 445 F.3d 50, 54 (1st Cir. 2006). Unlike a Rule 12(b)(6) motion, which is based solely on the complaint, a Rule 12(c)

3

motion is "based solely on the factual allegations in the complaint and answer." *NEPSK, Inc. v. Town of Houlton*, 283 F.3d 1, 8 (1st Cir. 2002). Judgment on the pleadings is only appropriate "if the uncontested and properly considered facts exclusively establish the movant's entitlement to a favorable judgment." *Aponte* at 54.

## Discussion

The only question before the Court is whether the Policy's choice of law clause, which requires the Court to apply New York substantive law to "this insuring agreement" unless a "well established, entrenched" federal admiralty precedent or principle exists, bars Andersson from bringing a Massachusetts ch. 176D bad faith claim.

The parties agree that no well-established federal admiralty law governing Andersson's bad faith insurance counterclaim exists, so the Court must decide whether New York or Massachusetts law applies. Andersson makes two arguments about why New York law does not apply to his 176D counterclaim:[1] 1) the second clause of the choice of law provision limits the application of New York law to purely contractual claims and counterclaims; and 2) applying New York law would violate Massachusetts public policy, which contains pro-consumer remedies that are not available under New York law.

A. <u>Whether the Scope of the Choice of Law Clause Excludes Non-Contractual Claims.</u>

> **"It is hereby agreed that any dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, this insuring**

---

[1] Andersson's opposition to the Motion argues that both his equitable estoppel and 176D counterclaims are governed by Massachusetts, rather than New York law. However, GLI's R. 12(c) motion only seeks the dismissal of Andersson's 176D counterclaim, so I will not discuss the equitable estoppel counterclaim.

4

**agreement is subject to the substantive laws of the State of New York."**

(Docket No. 1-2 at 4).

The language in the choice of law provision is divided into two clauses: a principal clause "*any dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice*" and a dependent clause "*but where no such well established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the State of New York*." Andersson argues that the dependent clause limits the application of New York law to "this insuring agreement," which means disputes about the explicit terms and conditions written in the policy. By contrast, the language of the principal clause applies established federal admiralty law (where it exists) more broadly to "any dispute arising hereunder."

Under Andersson's reading, New York law applies to GLI's breach of contract claim and his breach of contract counterclaim because they both arise from the policy's warranty terms and conditions, namely, whether Andersson sailed beyond the navigational limits and whether he maintained *The Melody* in a seaworthy condition prior to the stranding. However, extraneous counterclaims like the ch. 176D counterclaim which concern GLI's handling of Andersson's coverage claim are not subject to the New York choice of law provision because they do not apply to a discrete Policy term or condition.

I disagree with Andersson's reading of the choice of law provision. As both parties have noted, the choice of law clause at issue here has already been construed by other courts. Multiple courts have agreed that the two clauses should not be read in isolation, and so New York law applies to extra contractual claims that "arise hereunder", not just claims that are part of "this insuring agreement." *See, e.g. Great Lakes Reinsurance (UK) PLC v. Tico Time Marine*

5

*LLC,* 2011 WL 104415 at *3-4 (S.D. Tex. Mar. 16, 2011) ("It does not make sense to interpret the phrase that calls for the application of New York law when there is no entrenched maritime precedent as applying only to the agreement and not to the disputes arising under the agreement, because such an interpretation would leave no alternative for this class of claims, even though the provision clearly intends (by using the phrase "but where no such well established, entrenched precedent exists.") to establish an alternative choice of law if there is no entrenched maritime law."); *Openwater Safety IV, LLC v. Great Lakes Insurance SE*, 435 F.Supp.3d 1142 (D. Colo. 2020) (finding that New York law applied to all parties' claims and counterclaims which "ar[o]se from the Parties' performance under the insurance contract *and subsequent coverage dispute*) (emphasis added); *Chiariello v. Ing Groep NV*, 2006 A.M.C. 2148 (N.D. Cal. 2006) (finding that New York law applied to motion for attorney's fees for insurer's bad faith denial of claim because there was no established maritime law on point); contra *Great Lakes Insurance SE v. Boat Rental Miami, Inc.*, 2020 WL 264674 at *5 (S.D. Fl. Jan. 17, 2020).

B. <u>Whether Massachusetts Public Policy Renders the Choice-of-Law Provision Unenforceable.</u>

It is no accident that the marine insurance policy at issue here designates New York law for claims arising under the Policy unless established admiralty law exists. As GLI acknowledges, "the amount of premium Andersson paid for his policy . . . is directly reflected in the fact that GLI has relied on this choice of law clause for the past fifteen years to bar the application of state law bad faith statutes." (Docket No. 37 at 7). There is no comparable cause of action under New York law to ch. 176D, which incentivizes honest dealing by awarding double or treble damages against insurers who act in bad faith when a policyholder files a claim under the policy. M.G.L. 93A § 9(3). New York does not recognize an independent bad faith

6

tort, and limits recovery for violation of the covenant of good faith and fair dealing to consequential damages determined by a party's reasonably foreseeable harm. *Bi-Economy Market, Inc. v. Harleysville Ins. Co. of New York*, 886 N.E.2d 187, 193-94 (N.Y. App. Ct. 2008).

"[F]ederal admiralty jurisdiction attaches in actions based upon marine insurance policies." *Acadia Ins. Co. v. McNeil*, 116 F.3d 599, 601 (1st Cir. 1997). A federal court sitting in admiralty must apply federal (rather than state) choice of law rules. *Maclean v. Travelers Insurance Company*, 299 F.Supp.3d 231 (D. Mass. 2019) (citing *State Trading Corp. of India v. Assuranceforeningen Skuld*, 921 F.2d 409, 414 (2d Cir. 1990); *see also Great Lakes Reinsurance (UK) PLC v. Durham Auctions, Inc,*. 236, 242 (5th Cir. 2009). By comparison, a federal court sitting in diversity jurisdiction must apply the choice-of-law rules of the forum state to determine the applicable law. *See Reicher v. Berkshire Life Ins. Co. of Am.*, 360 F.3d 1, 4 (1st Cir. 2004).

Under the federal maritime choice of law rules which apply in this case, "contractual choice of law provisions are generally recognized as valid and enforceable." *Durham Auctions* at 242. This means that "where the parties specify in their contractual agreement which law will apply, admiralty courts will generally give effect to that choice." *Cashman Equipment Corp. v. Kimmins Contracting Corp.* at *3, 2004 WL 32961 (D. Mass. 2004) (citing *Flores v. Amer. Seafoods Co.*, 335 F.3d 904, 916 (9th Cir. 2003) (citation omitted); *Milanovich v. Costa Crociere, S.p.a.*, 954 F.3d 763, 767 (D.C. Cir. 1992); *Stoot v. Fluor Drilling Servs., Inc.*, 851 F.2d 1514, 1517 (5th Cir. 1988). A contractual choice-of-law clause will not be set aside unless "the state has no substantial relationship to the parties or the transaction or the state's law conflicts with the fundamental purposes of maritime law." *Maclean v. Travelers Insurance Co.*, 299 F.Supp.3d 231, 234 (D. Mass. 2017); *Cashman Equipment Corp*. at *2; *Stoot* at 1517; Restatement (Second) of the Conflicts of Laws § 187 (1971).

Andersson has not shown that either of the circumstances set out in *Stoot* justify setting aside the Policy's choice of law clause favoring New York law. Andersson did not address the sufficiency of GLI's contacts with New York or whether New York's law concerning remedies for an insurer's bad faith denial of a claim conflicts with federal maritime law. Instead, Andersson cites principally to non-admiralty cases for the proposition that the Court should look to New York law to determine whether New York or Massachusetts law should apply to Andersson's ch. 176D counterclaim. (Docket No. 34 at 6-10, 12-16).

Andersson does rely on three admiralty cases for support: *Miami Boat Rental*, *Martin*, and *Hamburger Versicherungs*. I will pass over *Hamburger Versicherungs*, as the opinion is not available on Westlaw or Lexis and Andersson did not provide a copy for the Court. *Hamburger Versicherungs v. Wimber,* Civil Case No. 03-285 (D.N.M. Aug. 11, 2003). In *Martin*, the district court found that Arizona law applied to the plaintiff's Arizona bad faith claim despite a New York choice of law clause in a marine insurance contract with an identical choice of law clause, but the case appears to be inapposite because the district court conducted a choice of law analysis as if it were sitting in diversity, not admiralty. *Martin v. Great Lakes Reinsurance (U.K.), P.L.C.,* 2010 WL 94120 at *3, n.4 (Jan. 6, 2010) ("admiralty procedural law does not apply in this case because removal was based on diversity jurisdiction . . ."). And so, that court applied a different choice of law standard than what other courts in this district cited in *Cashman* and *Maclean*. In *Miami Boat Rental*, a district court affirmed on reconsideration that the choice of law clause (the same clause as is at issue here) only applied New York law to disputes about discrete policy terms, and so—in the absence of any maritime law on point—the law of the forum state (Florida) applied, meaning that the defendant's reformation and breach of fiduciary duty counterclaims based on Florida law survived a motion to dismiss. *Great Lakes Insurance SE v. Boat Rental*

*Miami, Inc.*, 2020 WL 264674 at *5 (S.D. Fl. Jan. 17, 2020). Because I have already decided not to read the choice of law clause to restrict New York law to purely contractual claims, *Miami Boat Rental* is not persuasive.

To be sure, there is discord in admiralty case law about whether to consider the forum state's public policy when a contractual choice of law provision calls for the application of a third state's substantive law. For example, in *Sea Cat I*, a district court sitting in admiralty weighing an identical choice of law provision found that New York law applied to the defendant's Oklahoma state law bad faith denial of insurance coverage counterclaim but based its decision on the fact that Oklahoma's Insurance Code allowed marine insurance policies to select non-Oklahoma laws to govern insurance disputes. 653 F.Supp.2d 1193, 1198 (W.D. Ok. 2009). The *Sea Cat I* court's reasoning implied that a forum state's public policy interest could override a choice of law provision in an admiralty case, and that the proper legal inquiry is whether the forum state's law conflicts with the designated state's law, not whether the designated state's law (here, New York) conflicts with maritime law. *See also Great Lakes Reinsurance (UK) PLC v. Dion*, 2009 WL 5174372 (S.D. Cal. Dec. 18, 2009) (briefly remarking that "[t]he parties have not identified any fundamental policy of either California or admiralty law that conflicts with New York law" and applying New York substantive law in admiralty case with same choice of law provision to dismiss counterclaim not recognized under New York law); *contra Galilea, LLC v. AGCS Marine Insurance Co.*, 879 F.3d 1052 (9th Cir. 2018) (finding that forum state's public policy against enforcing arbitration agreements was not relevant in admiralty case to compel arbitration because "compelling state policy cannot override squarely applicable federal maritime law").

However, I find the reasoning by a recent decision in the Eastern District of Pennsylvania more persuasive. *Great Lakes Insurance SE v. Raiders Retreat Realty Co.*, LLC, 2021 WL 66806 (E.D. Pa. Feb. 22, 2021). There, the district court, sitting in admiralty, held that an identical choice of law provision in a marine insurance contract was enforceable, and so New York law applied to and barred the defendant's Pennsylvania state law counterclaims, including a counterclaim for violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Act, a similar statute to ch. 176D. *Id*. at 4-7. The *Raiders* court applied a similar choice of law standard to what *Cashman* and *McClean* proposed when evaluating whether state law claims from the forum state could survive in an admiralty case where a choice of law provision selected the substantive law of a third state. "The issue is not," wrote Judge Robreno, "whether New York law conflicts with Pennsylvania public policy; the issue is whether the well-established principle that choice-of-law provisions in maritime contracts are presumptively valid must yield to the public policy preferences of the particular state in which the case happens to have been brought." *Id*. at 6. The Court dismissed the Pennsylvania state counterclaims, finding that New York law applied, and its substantive law was incompatible with Pennsylvania's. *Id*. at 6.

As Andersson has not shown that the application of New York law to his ch. 176D counterclaim would conflict with any well established principle in federal maritime law or that New York has no substantial relationship to the parties or the transaction, New York law applies to his 176D counterclaim. As New York law does not provide for ch. 176D counterclaims, GLI's motion to dismiss Andersson's ch. 176D counterclaim is granted.

## Conclusion

For the reasons set forth above, Plaintiff's motion for judgment on the pleadings as to Defendant's Third Cause of Action is ***granted***. Accordingly, Defendant's M.G.L. ch. 176D bad faith counterclaim is dismissed.

**SO ORDERED.**

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**