## MARINE SALVAGE SERVICE AGREEMENT

This agreement is signed by and between:

MARTIN ANDERSSON, American, of legal age, married, with American passport number 509499267, domiciled at 215 Stockton Blv., Sea Girt, New Jersey 08750, United States of America and provisionally in Boca Chica, Dominican Republic, hereinafter "M.A." or by its full name; and

CARIBE CATAMARAN YACHT DESIGN SD, S.R.L., legal entity organized under the laws of the Dominican Republic, registered at the Chamber of Commerce under the number 155126 and national taxpayer code 1-31-87347-2 and place of business at calle Sanchez 3 El Toro, Guerra, Santo Domingo Este, Dominican Republic, represented by Mr. Antonino Mazzonello, Italian citizen, of legal age, single, with Dominican ID number 001-1690042-4, domiciled at calle La Paz 1 El Toro, Guerra, Santo Domingo, Dominican Republic and provisionally in Boca Chica, Dominican Republic, hereinafter "CCYC" or by its full name.

### RECITALS

WHEREAS: M.A. is the owner of the vessel described hereinafter which is stranded in Boca Chica, Dominican Republic.

WHEREAS: CCYC is an enterprise with vast experience in the salvage, rescue and extraction of boats and any other objects stranded in masses of water due to shipwrecks, abandonments, or any other reason that may impede the navigation of the ship.

WHEREAS: The parties have convened that this agreement will dictate the terms and conditions under which CCYC will salvage the vessel property of M.A.

NOW THEREFORE, and in the understanding that the foregoing preamble is an integral part of this agreement, the parties, freely and voluntarily,

### AGREED AND COVENANTED THE FOLLOWING:

1. **Services**

1.1. CCYC hereby commits itself to salvage the vessel identified as Melody 2000 Catana 47' with Yanmar twin 55hp diesel engine CAT47120B000, with United States flag which is aground in the following coordinates N 18.26.40 W 69.36.24.

2. **Terms of payment**

2.1. Services hereinabove are rendered on a "No Cure, no Pay" basis; in that sense, CCYC will receive the vessel – as retrieved from the site- as payment for the services provided.

2.2. CCYC shall pay M.A. US$1,000 in cash with the signature of this agreement for the remains of the vessel herein transferred.

2.3. The transfer of ownership of the vessel from M.A. to CCYC is effective as of the date of signature of this agreement.

2.4. Due to the payment received by M.A. and the transfer of the property to CCYC, both parties release each other from said obligations.

### 3. Obligations of CCYC

3.1. CCYC shall employ its best efforts to retrieve the vessel in one piece; however, if the retrieval of the vessel in one piece is not feasible, CCYC will retrieve the vessel by parts. In any case, CCYC shall retrieve any sort of debris from the site of the wreckage and deem the site as if the vessel was never there.

3.2. If the retrieval of the vessel has to be carried out by breaking down the vessel in pieces, CCYC shall issue a report indicating the reason why the vessel could not be salvaged in one piece.

3.3. CCYC shall transport the remain of the vessel to the port of Boca Chica and is the sole responsible party for the costs involved in the transportation and storage of the vessel at said port.

3.4. CCYC shall keep the remains of the vessel at the port of Boca Chica for 30 days or until the insurance company renders the report regarding the policy, whichever comes first. Furthermore, CCYC shall allow M.A., Great Lakes Insurance SE, or agents thereof, access to the vessel upon request during that time for the purpose of surveying or documenting the status of the vessel.

3.5. CCYC shall provide M.A. with reports that include videos and photographs to determine the conclusion of the salvage process.

3.6. As of the day of retrieval, CCYC will be responsible for the vessel or its parts, being obligated to storage them, keep them and control them. CCYC shall hold M.A. harmless for any damage or loss that the vessel or its remains may cause to third parties while they are in the custody of CCYC.



### 4. Transfer of the property.

4.1. M.A. transfers the property of the vessel to CCYC as of the date of signature of this agreement; therefore, CCYC is fully responsible for the vessel and any damages or harms that the vessel could cause.

4.2. CCYC accepts the remains of the vessel in the conditions retrieved from the site of wreck and releases M.A. from any warranties as to the functionality or not of the parts or remains.

4.3. If the vessel is retrieved in one piece, M.A. authorizes CCYC to transfer it under its name; CCYC will be solely responsible for completing the proceedings required to have the vessel transferred under its name.

4.4. Disregarding the above, M.A. shall collaborate with CCYC and handle any documentation that may be required by the local authorities to formalize transfer of ownership of the vessel.

### 5. Environmental permits and declarations.

5.1. CCYC hereby declares and guarantees the following:

5.1.1. That the company and its personnel have the required skills, expertise and know-how to retrieve the vessel without causing any damage to the environment or ecosystem where the vessel is aground.

5.1.2. That the company has all the permits and licenses required by any law or resolution required by the local authorities to remove and recover from open water parts or the wholeness of vessels that have been involved in shipwrecks.

5.1.3. That the environmental permits are valid and can be used.

5.2. CCYC acknowledges that the declarations previously indicated are of such importance that M.A. would not have convened without them.

## 6. Exoneration of liability.

6.1. As of the signature of this agreement and consequent transfer of property of the vessel, CCYC is the sole responsible for any loss or damage that the removal, transportation and storage of the vessel could cause to the environment or third parties.

6.2. Furthermore, CCYC is exclusively responsible for any damage that the shipwreck could have caused to the environment.

6.3. In that sense, CCYC will hold M.A. harmless for any claim, judicial or not, that is related to the services provided by CCYC. If M.A. is forced to pay any sum of money that may result from such claim, CCYC shall redeem any amount paid by M.A.

6.4. These obligations will have a term of 20 years, disregarding if the term of the agreement arrives.

## 7. Term of the agreement.

7.1. This agreement will be effective as of its signature, as indicated hereinbelow until the term indicated in clause 6.4; however, if an additional term is expressly convened by the parties, said term shall prevail.

7.2. Disregarding the above, if CCYC fails to fulfill any of the obligations indicated hereinabove, M.A. can terminate this agreement by giving written notice to CCYC within 10 days prior to the date of termination.

## 8. Entire agreement.

8.1. This Agreement constitutes the entire agreement between the parties hereto with respect to the subject matter contained in this Agreement.

## 9. Miscellaneous.

9.1. This agreement supersedes any prior written or verbal convention existent between the parties with respect to the subject matter of this agreement; both parties declare that they have no prior claims between each other.



9.2. The obligations assumed by the parties in this agreement can only be modified by a written agreement signed by the parties or an authorized person.

9.3. Notifications between the parties shall be made in the addresses – including emails- indicated herein.

9.4. All notifications, judicial or extrajudicial, made in said addresses shall be deemed valid, if the addresses are not modified in written by the parties.

9.5. The parties acknowledge the validity of communications received to the following email addresses:

9.5.1 **MARTIN ANDERSSON** : mandersson031@gmail.com

9.5.2 **CARIBE CATAMARAN YACHT DESIGN SD, S.R.L** : multihullyachtdesign@gmail.com

9.6. Each provision and agreement herein shall be treated as separate and independent from any other provision or agreement herein and shall be enforceable notwithstanding the unenforceability of any such other provision or agreement.

9.7. The failure to enforce at any time any provision of this Agreement does not constitute a waiver of that provision or of any other provision of this Agreement.

9.8. For any provision not included in this agreement and that deems necessary for the execution or interpretation of the agreement, the parties refer to the applicable laws and regulations of the Dominican Republic. Thee parties to this Agreement hereby consent to the non-exclusive jurisdiction of the courts of the Dominican Republic, in connection with any actions or proceedings arising directly or indirectly from this Agreement.

9.9. The parties acknowledge that this agreement has been enacted and signed in both English and Spanish; however, the Spanish version shall prevail in case of dispute or conflict during the execution of this agreement.

Signed on January 10th, 2020 in Boca Chica, Dominican Republic.

_____       _____
MARTIN ANDERSSON                      ANTONINO MAZZONELLO, in
                                      representation of CARIBE CATAMARAN
                                      YACHT DESIGN SD, S.R.L.