**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**
**IN ADMIRALTY**

| | | |
|---|---|---|
| **GREAT LAKES INSURANCE SE,** | : | |
| | : | **Case No. 4:20-cv-40020-DHH** |
| | : | |
|     **Plaintiff,** | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **MARTIN ANDERSSON** | : | |
| | : | |
|     **Defendant.** | : | |
| _____ | : | |

**GREAT LAKES INSURANCE SE'S MEMORANDUM OF LAW IN OPPOSITION TO**
**MOTION FOR SUMMARY JUDGMENT UNDER FED.R.CIV.P 56**

COMES NOW the Plaintiff, GREAT LAKES INSURANCE SE, by and through its undersigned counsel, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 7.1 and 56.1 of the United States District Court for the District of Massachusetts, and for its memorandum of law in opposition to the motion for summary judgment filed by Defendant MARTIN ANDERSSON, respectfully states as follows:

**Burden of Proof**

Under Massachusetts law, the party alleging a breach of M.G.L.A. ch. 93A, §2 and M.G.L.A. ch. 176D, §3 bears the burden of presenting evidence showing that the insurance company engaged in an unfair trade practice. *Clarendon National Insurance Company v. Philadelphia Indemnity Insurance Company*, 954 F.3d 397, 409 (1st Cir.2020). "To establish a claim of bad faith, a plaintiff must produce factual evidence of the defendant's knowledge and intent." *Id.*

**M.G.L.A. Ch. 176D, §3(9)(a)**
**(Misrepresenting Pertinent Facts Or Insurance Policy Provisions)**

1

The first scattershot allegation made by Defendant MARTIN ANDERSSON (hereinafter "ANDERSSON") is that Plaintiff GREAT LAKES INSURANCE SE (hereinafter "GLI") might "arguably" have "misrepresented" the need for ANDERSSON to submit a proof of loss form.  ECF no. 152, p. 18.  There is absolutely nothing in this unsupported allegation of any "knowledge" or "intent" by GLI to act in a bad faith manner.  *Clarendon*, at 409.  All that is shown from the undisputed evidence is that GLI's adjuster, Andrew Ball (hereinafter "Ball"), informed ANDERSSON that he could dispense with the unnecessary formality of a proof of loss form because the loss had already been reported and Ball was already present and conducting his investigation.  ANDERSSON's summary judgment memorandum does not bother to explain how this worked to "string him along."  Without any explanation of how this conduct was unreasonable or how this conduct demonstrates that GLI acted with some bad motive, this allegation is simply irrelevant.

## M.G.L.A. ch. 176D, §3(9)(b)

There is nothing showing that the amount of time GLI spent investigating the loss and communicating with the insured was unreasonable or that the period of time spent communicating was for some nefarious purpose.  There is absolutely nothing in this unsupported allegation of any "knowledge" or "intent" by GLI to act in a bad faith manner.  *Clarendon*, at 409.  ANDERSSON's memorandum of law does not include any citations to any caselaw or authority showing how the various time periods noted in the motion are impermissible.  There is nothing here for GLI to even argue against.

## M.G.L.A. ch. 176D, §3(9)(d)

The undisputed evidence shows that, at the time that GLI elected to file its declaratory judgment action, ANDERSSON himself had already confirmed all the facts necessary to assert a

lack of coverage under the Policy's navigational limits warranty and the Policy's seaworthiness warranty.

First, ANDERSSON's letter of January 15, 2020 clearly acknowledges that, due to weather, he elected to steer a more northerly course directly across the Caribbean. ANDERSSON's letter of January 15, 2020 is attached hereto as Exhibit 1 (Andersson_CF000145 – Andersson_CF000148).   Much later, this Court ruled that the Policy's navigational limits warranty was not breached if that warranty is read to include Aves Island. *Great Lakes Insurance SE v. Andersson*, --- F.Supp.3d ----; 2023 WL 2601669 (D.Mass.2023).   But, at the time that the claim was evaluated in 2020, neither party thought that Aves Island was part of the navigational limits warranty.   It is for precisely this reason that Ball did not pursue the Vessel's GPS any further. As noted in the correspondence, ANDERSSON was not disputing that his change of course took him more than 150 NM from shore.   Ex 1.   Therefore, with respect to the navigational limits warranty, no further investigation was necessary.

Second, with respect to the Vessel's charts, the reservation of rights letter sent on December 27, 2019 clearly repeats the facts which ANDERSSON related to Ball; that the Vessel lacked current, accurate charts for the areas within the Policy's navigational limits.   The Reservation of Rights Letter is attached hereto as Exhibit 2.   These facts being established beyond dispute, there was no need to conduct any further investigation.

Third, all the information given by ANDERSSON in the course of the investigation showed that Naranjo was "incapacitated" by seasickness on December 15 and December 16.   The Report of Andrew Ball dated December 23, 2019 is attached hereto as Exhibit 3.   Therefore, GLI had no reason to suspect that Naranjo had been operating the Vessel during the time that ANDERSSON elected to sail North directly to The Dominican Republic.   Under the Massachusetts bad faith

statute, there is no burden on the insurer to conduct its investigation under the assumption that the insured is not telling the whole truth.  There is absolutely nothing here which shows any "knowledge" or "intent" by GLI to act in a bad faith manner.  *Clarendon*, at 409.  Therefore, GLI did nothing improper in failing to realize that ANDERSSON's account of the final voyage was less than 100% truthful.

### M.G.L.A. ch. 176D, §3(9)(e)

ANDERSSON's memorandum contains nothing, neither facts nor caselaw, showing how long GLI should have taken to evaluate his claim and consider its legal rights.  There is nothing here to argue against.

The truth is, ANDERSSON's real complaint is that GLI elected to file a declaratory judgment action based on admiralty jurisdiction without first giving him his own chance to "race to the courthouse" so as to file first and elect for a jury trial.  This Court has already ruled that GLI was perfectly within its rights to file a declaratory judgment action that invoked admiralty jurisdiction and elected for a bench trial.  *Great Lakes Insurance SE v. Andersson*, 525 F.Supp.3d 205 (D.Mass.2021).  Therefore, it cannot possibly be bad faith for GLI to specifically elect to vindicate its rights under procedures established by Congress (declaratory judgment, 28 U.S.C. §2201) and by the Constitution (bench trials in admiralty, *Waring*, *infra*).

### M.G.L.A. ch. 176D, §3(9)(f)

ANDERRSON seems to be under the misapprehension that the Massachusetts bad faith statute requires making a settlement offer, even when the insurer has conducted an investigation and has made its own determination that the policy of insurance affords no coverage for the loss. There is no such requirement.

Under Massachusetts law, there is no requirement whatsoever for an insurer to make any kind of settlement offer so long as it has a good faith basis for contesting coverage. *Calandro v. Sedgwick Claims Management Services, Inc.*, 919 F.3d 26 (1st Cir.2019).  This applies during both the underlying litigation and the appeal.  *Id*.  "Liability is not reasonably clear if an element in the underlying claim is subject to good-faith disagreement.  An insurer who has investigated a claim and has a good-faith basis for concluding that liability is not reasonably clear does not violate Chapter 176D either by delaying a settlement offer ***or for withholding one altogether***."  *Id*, at 34 [internal citations omitted][emphasis added].

As detailed in its summary judgment memorandum of law, GLI investigated this claim and uncovered facts triggering two bases for declining coverage; breach of the Policy's navigational limits warranty and breach of the first implied seaworthiness warranty.  Ex 3.  Although these have been held by this Court to be without merit, "Massachusetts law is clear that there is no violation of chapter 176D where the insurer and insured had a 'legitimate difference of opinion as to the extent of liability.'"  *River Farm Realty Trust v. Farm Family Casualty Insurance Company*, 943 F.3d 27, 38 (1st Cir.2019).  "An insurer who has investigated a claim and has a good-faith basis for concluding that liability is not reasonably clear does not violate Chapter 176D either by delaying a settlement offer or for withholding one altogether."  *Id*, at 34.

The proper application of §3(9)(f) was demonstrated by the First Circuit in *Ferrara & DiMercurio, Inc. v. St. Paul Mercury Ins. Co.*, 169 F.3d 43; 2001 A.M.C. 1320 (1st Cir.1999).  Like the present case, *Ferrara* concerned a policy of marine insurance affording first-party property damage coverage for a vessel which was destroyed by fire.  *Id*, at 46.  Following the loss, the insurer appointed expert adjusters to investigate the claim.  *Id*, at 47.  Based on the facts found in that investigation, the insurer denied coverage based on the insurance policy's exclusion for

arson committed by the insured.  *Id*, at 48.  First, the district court ruled on summary judgment that the policy afforded coverage for the loss.  *Id*.  Then, after further discovery, the trial court ruled that the insured had failed to show bad faith under M.G.L.A. ch. 176D, §3.  *Id*, at 49.

On appeal, the insured argued that the marine insurer violated §3(9)(f) because it should have settled the claim after the district court's decision finding coverage.  *Id*, at 56.  However, applying Massachusetts law, the First Circuit rejected this contention.  *Id*.  The First Circuit held that no duty to settle ever arose because (1) the insurer's denial was based on the facts determined by its experts in the investigation and, even at the appeal stage, (2) the insurer was contesting coverage in good faith.  *Id*.  When a litigant believes that the district court's decision is based on some error which furnishes a basis for appeal, contesting coverage in good faith must therefore include bringing such an appeal.  *Id*.

To give another example, the case of *Public Service Mut. Ins. Co. v. Cape Cod Distributors, Inc.* arose out of a policy of insurance covering an employer's liability to employees.  2012 WL 745019 (D.Mass.2012).  Following an incident in which an employee was injured and asserted a claim against the employer, the insurer investigated the claim, identified multiple policy provisions which barred coverage, and, in conjunction with its denial of coverage, initiated a declaratory judgment action in this court to confirm its coverage decision.  *Id*, at 6.  Just like ANDERSSON in the present matter, the insured counterclaimed for breach of contract and violation of ch. 93A and ch. 176D.  *Id*.  On summary judgment, the district court found that the various terms and exclusions were not applicable, and that the liability policy afforded coverage.  *Id*, at 6-15.  Therefore, having found that the insurer's coverage evaluation was erroneous, the district court next had to consider whether any of the insurer's conduct breached the Massachusetts bad faith statute.  *Id*, at 15.

First, the district court repeated the rule which applies here, that "a mere breach of contract does not constitute and unfair or deceptive trade practice under 93A." *Id*, at 16, *quoting*, *Commercial Union Ins. Co. v. Seven Provinces Ins. Co.*, 217 F.3d 33, 40 (1st Cir.2000). Second, the district court recognized that "[l]iability under c. 176D and 93A does not attach merely because an insurer concludes that it has no liability under an insurance policy and that conclusion is ultimately determined to have been erroneous." *Id*, *quoting*, *Pediatricians, Inc. v. Provident Life & Accident Ins. Co.*, 965 F.2d 1164, 1173 (1st Cir.1992). Third, the district court found absolutely nothing improper in the insurer's election to determine its rights in a declaratory judgment action. *Id*. Based on these principles, the district court held that there was no violation of ch. 93A, notwithstanding the fact that the insurer never made any offer of settlement throughout the handling of the claim or the court proceedings. *Id*.

ANDERSSON's scant argument on this point seems to say that GLI should make some kind of settlement offer at this time. For what? First, with respect to the coverage afforded by the Policy, this Court has already held that the Policy affords coverage. ECF no. 124. There is nothing to settle because the Parties have agreed on the quantum of damages. If, following the multiple appeals which are either pending or which will be filed, GLI is still the loser on the merits, then GLI will pay the value of the damages which the parties have agreed on. Therefore, there is nothing for GLI to offer at this point. Second, with respect to bad faith, the parties are still disputing that issue right now. Therefore, there is nothing for GLI to offer at this point. Third, GLI is presently appealing this Court's decision not to enforce the Policy's express definition of "seaworthy." ECF no. 134. Therefore, any settlement offer now is premature. Finally, as soon as the bad faith issue is resolved, GLI will be renewing its appeal of this Court's decision denying leave to amend its declaratory judgment action to allege a breach of the Policy's named operator

warranty.   ECF no. 60.   As detailed in other pleadings, this Court's decision was based on ANDERSSON's misrepresentations as to the facts which he disclosed to GLI in the course of the claim investigation.   ECF no. 62.   Therefore, any settlement offer now is premature and unnecessary under §3(9)(f).

## M.G.L.A. ch. 176D, §3(9)(g)

Again, ANDERSSON's two-sentence argument on this point can be ignored because ANDERSSON does not understand what kind of conduct is within the ambit of §3(9)(g).   Under Massachusetts law, "[t]he protections of this provision apply only where liability is 'reasonably clear'" under §3(9)(f).   *Martorana v. Progressive Direct Insurance Company*, 2023 WL 2465639, p. 6 (D.Mass.2023) (*quoting*, *Guity v. Commerce Ins. Co.*, 631 N.E.2d 75, 77 (Mass.App.Ct.1994).

In order to show a breach of §3(9)(g), ANDERSSON first has to show a breach of the prior provision, §3(9)(f).   *Id.*   As noted above, GLI's investigation furnished multiples bases for denial, and coverage is still being disputed before the First Circuit.   Therefore, there can be no breach of §3(9)(g).

## M.G.L.A. ch. 176D, §3(9)(n)

ANDERSSON's whole argument on this point seems to be that the simultaneous denial of coverage and filing of a declaratory judgment action is so facially obscene that no argument or citation to authority is required.   ECF no. 152, p. 12.   Although the lack of any actual argument makes it difficult to mount an opposition, it should be noted that there is absolutely nothing impermissible in a marine insurer taking simultaneous action to assert its rights under the policy of marine insurance and federal law.

Under the federal declaratory judgment statute, 28 U.S.C. §2201, GLI is specifically permitted to act as a plaintiff to invoke this Court's admiralty jurisdiction and request a bench trial.

A marine insurer's declaratory judgment action, even one that invokes admiralty and requests a bench trial, is a "normal and orderly procedure." *Markel American Ins. Co. v. Linhart*, 2012 WL 2930207, p. 3 (E.D.N.Y.2012), *St. Paul Fire and Marine Ins. Co. v. Holiday Fair, Inc.*, 1996 WL 148350, p. 2 (S.D.N.Y.1996).  Moreover, it would be perverse indeed to invert the relationship between the federal government and the states by allowing a state statute to transmute GLI's good faith conduct under federal admiralty law into bad faith conduct under state law.  There is absolutely nothing in this unsupported allegation of any "knowledge" or "intent" by GLI to act in a bad faith manner.  *Clarendon*, at 409.

### Deprivation of ANDERSSON's Rights

ANDERSSON's final allegation rests on lots of citations and quotations, but furnishes no authority whatsoever for the contention that a declaratory judgment action, the invocation of admiralty jurisdiction, or the election for a bench trial constitutes an unfair trade practice.  None of the authorities cited is even relevant:

- In *Schubach*, the Massachusetts SJC found a breach of M.G.L.A. ch. 93A, §9 because the action taken by defendant collection company, filing collections actions in inconvenient jurisdictions, was already considered an unfair practice by the Federal Trade Commission, meaning that the Massachusetts statute allowing such conduct was preempted by federal law.  *Schubach v. Household Finance Corp.*, 376 N.E.2d 140, 141 (Mass.1978).

- In *Hatcher*, the Massachusetts SJC found no breach of M.G.L.A. ch. 93A, §9, even though the property manager who brought a summary process action against a lessor was not authorized to practice law.  *Rental Property Management Services v. Hatcher*, 97 N.E.3d 319 (Mass.2018).

- In *Jacob*, which was an admiralty suit, the plaintiff only had a jury right because that right was specifically granted by a federal statute, the Jones Act.  *Jacob v. City of New York*, 315 U.S. 752; 1942 A.M.C. 616 (1942).  The statutory grant was necessary precisely because there is no such Constitutional right in admiralty actions.  *Fitzgerald v. U. S. Lines Co.*, 374 U.S. 16, 17; 1963 A.M.C. 1093 (1963), *Balado v. Lykes Bros. S.S. Co.*, 179 F.2d 943, 945; 1950 A.M.C. 609 (2d Cir.1950).

- *Carter* simply said nothing at all about declaratory judgment actions or bench trials. *Carter v. Schooner Pilgrim, Inc.*, 238 F.2d 702 (1st Cir.1956). As in *Jacob*, *supra*, the seaman only got a jury because such a remedy is specifically allowed under the Jones Act. *Id.*

- *In re Acushnet River* was a diversity action, not an admiralty action, and it actually held that the plaintiff was not entitled to a jury trial on all of its claims. *In re Acushnet River & New Bedford Harbor Proceedings re Alleged PCB Pollution*, 712 F.Supp. 994 (D.Mass.1989).

The memorandum filed by ANDERSSON furnishes nothing to argue against. Obviously, ANDERSSON disagrees with the legal assertions advanced by GLI in this litigation. But, applying this caselaw, it is a mystery what basis ANDERSSON thinks he has for alleging that GLI acted with the "knowledge" or "intent" to commit unfair trade practices.

The only action which GLI took was to file a declaratory judgment action based on admiralty law and to invoke its own right to elect for a bench trial. When the declaratory judgment action was filed, GLI had extensive "knowledge" of the voluminous caselaw supporting its legal position. For decades, the federal courts throughout the entire United States have been holding bench trials to resolve marine insurance declaratory judgment actions:

- In 2019, the Eleventh Circuit affirmed that decision of the district court holding a bench trial and finding that the insured breached the policy's navigational limits warranty. *GEICO Marine Insurance Company v. Shackleford*, 945 F.3d 1135 (11th Cir.2019).

- In 2015, the First Circuit affirmed the decision of the district court holding a bench trial and finding that the disputed policy of marine insurance was void under the federal admiralty law doctrine of *uberrimae fidei* ("utmost good faith"). *Catlin at Lloyd's v. San Juan Towing & Marine*, 778 F.3d 69; 2015 A.M.C. 694 (1st Cir.2015).

- In 2009, the Eleventh Circuit affirmed the decision of the district court holding a bench trial and finding that the loss was proximately caused by corrosion. *St. Paul Fire and Marine Ins. Co. v. Lago Canyon, Inc.*, 561 F.3d 1181; 2009 A.M.C. 2794 (11th Cir.2009).

- In 1994, the Second Circuit affirmed the decision of the district court holding a bench trial and finding that the policy's theft exclusion was not ambiguous. *Sirius Ins. Co. (UK) Ltd. v. Collins*, 16 F.3d 34; 1994 A.M.C. 1683 (2d Cir.1994).

- In 1991, the Fifth Circuit affirmed the decision of the district court holding a bench trial and making findings as to the calculation of damages. *Albany Ins. Co. v. Anh Thi Kieu*, 927 F.2d 882; 1991 A.M.C. 2211 (5th Cir.1991).

- In 1989, the Eleventh Circuit affirmed the decision of the district court holding a bench trial and finding that the loss was caused by "barratry" as that term is understood in federal admiralty law. *Tillery v. Hull & Co.*, Inc., 876 F.2d 1517 (11th Cir.1989).

Bench trials have been a part of federal admiralty practice since at least 1847. *Waring v. Clarke*, 46 U.S. 441; 2006 A.M.C. 2646 (1847). At no point in this country's legal history has any court ever found that a vessel owner was unfairly disadvantaged by a federal judge sitting as factfinder. *Clear Spring Property and Casualty Company v. Matador Sportfishing, LLC*, 2022 WL 888099 (M.D.Pa.2022) (striking vessel owner's jury demand), *Great Lakes Insurance SE v. Crabtree*, 580 F.Supp.3d 1255 (S.D.Fla.2022) (striking vessel owner's jury demand), *United States Fire Insurance Company v. Icicle Seafoods, Inc.*, 572 F.Supp.3d 1047 (W.D.Wash.2021) (striking vessel owner's jury demand), *New York Marine and General Insurance Company v. Boss Interior Contractors, Inc.*, 2021 WL 1535401 (S.D.Fla.2021) (striking vessel owner's jury demand), *Great Lakes Reinsurance (UK) SE v. Herzig*, 413 F.Supp.3d 177; 2019 A.M.C. 2683 (S.D.N.Y.2019) (striking vessel owner's jury demand), *Great Lakes Reinsurance (UK) PLC v. Unplugged, LLC*, 2018 WL 11482221 (M.D.Fla.2018) (striking vessel owner's jury demand), *Great Lakes Reinsurance (UK) PLC v. Soriano*, 2015 WL 12778783 (S.D.Fla.2015) (striking vessel owner's jury demand), *Travelers Property Cas. Co. of America v. Ivy Marine Consultants, L.L.C.*, 2015 WL 2128935 (S.D.Ala.2015) (striking vessel owner's jury demand), *Great Lakes Reinsurance (UK) PLC. v. Jorge Roca*, 2008 WL 11466092 (S.D.Fla.2008) (striking vessel owner's jury demand), *American S.S. Owners Mut. Protection and Indem. Ass'n, Inc. v. Lafarge North America, Inc.*, 2008 WL 2980919 (S.D.N.Y.2008) (striking vessel owner's jury demand), *State National Insurance Company v. Anzhela Explorer LLC*, 2008 WL 11333250 (S.D.Fla.2008)

11

(striking vessel owner's jury demand), *Reliance Nat. Ins. Co. (Europe) Ltd. v. Hanover*, 246 F.Supp.2d 126; 2003 A.M.C. 715 (D.Mass.2003) (holding a bench trial on issues of material misrepresentation and unseaworthiness), *Albany Ins. Co. through GRE Ins. Group v. Jones*, 1996 A.M.C. 2456 (D.Alaska.1996) (striking the vessel owner's jury demand).

Surely, this Court was not acting in bad faith when it granted GLI's motion to strike ANDERSSON's jury demand. *Great Lakes Insurance SE v. Andersson*, 525 F.Supp.3d 205 (D.Mass.2021).

From the very beginning of this case, GLI acted with the deliberate "intent" of relying on the caselaw analyzed above. There is simply no evidence presented that GLI's election to invoke its rights under federal admiralty law shows any "knowledge" or "intent" to commit an unfair trade practice.

## Conclusion

Merely being wrong does not violate M.G.L.A. ch. 93A and ch. 176D. Where an insurer asserts a plausible interpretation of the policy, where an insurer relies on the opinion of outside coverage counsel, and where there is no evidence of an ulterior wicked motive, there can be no bad faith under the Massachusetts state. *Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co.*, 545 N.E.2d 1156, 1160 (Mass.1989).

There is simply nothing in the record before this Court showing that GLI ever acted in bad faith. GLI did everything necessary to investigate the causes and circumstances of loss, maintained constant communication with ANDERSSON, properly informed him of the coverage issues, sought the legal opinion of outside coverage counsel, and elected to vindicate its rights under the Policy by filing a declaratory judgment action premised on admiralty jurisdiction and admiralty

practice. ECF no. 151, pp. 1-12. On these undisputed facts, there can be no finding that GLI acted

with the requisite "knowledge and intent" to breach M.G.L.A. ch. 93A and ch. 176D.

WHEREFORE, GLI asks that this Court award to GLI summary judgment with respect to

ANDERSSON's bad faith claim under Massachusetts law, and award all such further relief as may

be appropriate in the premises.

Dated: July 18, 2023
Brookline, Massachusetts

THE GOLDMAN MARITIME LAW GROUP
Attorneys for Plaintiff
233 Harvard Street
Suite 211
Brookline, MA 02446
Tel (617) 566-4200
Cel (617) 671-8657
Fax (617) 566-4292

By:    _____/s/ Michael I. Goldman_____
         MICHAEL I. GOLDMAN ESQ.


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Court
using the CM/ECF System which will provide and electronic notice to all counsel, of record.

Dated: July 18, 2023
Brookline, Massachusetts

GOLDMAN & HELLMAN
Attorneys for Plaintiff
233 Harvard Street
Suite 211
Brookline, MA 02446
Tel (617) 566-4200
Cel (617) 671-8657
Fax (617) 566-4292

By:    _____/s/ Michael I. Goldman_____
         MICHAEL I. GOLDMAN ESQ.