UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
IN ADMIRALTY

| | |
|---|---|
| **GREAT LAKES INSURANCE SE,** | |
| | Case No. 4:20-cv-40020-DHH |
| **Plaintiff,** | |
| vs. | |
| **MARTIN ANDERSSON** | |
| **Defendant.** | |

### GREAT LAKES INSURANCE SE'S MOTION TO AMEND FACTUAL FINDINGS AND INCORPORATED MEMORANDUM OF LAW

COMES NOW the Plaintiff, GREAT LAKES INSURANCE SE, by and through its undersigned counsel, pursuant to the Federal Rule of Civil Procedure 52(b) and Local Rule 7.1 of the United States District Court for the District of Massachusetts, and for its motion to amend the factual findings of this Court's summary judgment order of March 28, 2024 (ECF no. 183). Further thereto, Plaintiff GREAT LAKES INSURANCE SE respectfully states as follows:

Plaintiff GREAT LAKES INSURANCE SE (hereinafter "GLI") is concerned that this Court's summary judgment decision of March 28, 2024 is based on manifest errors of fact (asserting facts which have no support in the record), which resulted in erroneous legal conclusions (basing its decision on facts which are either irrelevant to the question of whether GLI acted in bad faith, which fail to show an improper motive, or which mistake the legal test for bad faith). *Ferrara & DiMercurio, Inc. v. St. Paul Mercury Ins. Co.*, 169 F.3d 43; 2001 A.M.C. 1320 (1st Cir.1999).

A motion under Fed.R.Civ.P. 52(b) serves the limited purpose of "permit[ing] a party to correct manifest errors of law or fact[.]" *Krim v. pcOrder.com, Inc.*, 212 F.R.D. 329, 331 (W.D.Tex.2002). *Diebitz v. Arreola*, 834 F.Supp. 298, 302 (E.D.Wisc.1993). Fed.R.Civ.P. 52(b)

1

"permits a court, on a party's motion, to amend its findings–or make additional findings[.]" *Hartford Roman Catholic Diocesan, Corp. v. Interstate Fire and Casualty Co.*, 2017 WL 3172536, p. 1 (D.Conn.2017). *Kline v. Archuleta*, 309 F.R.D. 91, 93 (D.D.C.2015)

Based on the manifest errors of fact detailed herein, which resulted in erroneous legal conclusions, GLI contends that it is entitled to a decision correcting the factual misstatements relied upon in this Court summary judgment ruling on ANDERSSON's bad faith claim.

1. **"GLI took no action to investigate the facts of the claim beyond the vessel inspection and interview conducted by Mr. Ball on December 21, 2019." ECF no. 183, p. 11.**

GLI contends that it is an error of law for this Court to base its summary judgment decision on this fact because this is an incorrect statement of the undisputed record. First, based on the information provided on December 21, 2019, GLI merely sent a reservation of rights letter detailing coverage issues raised by the facts provided so far. ECF no. 151-19, pp. 1-2. Second, on January 15, 2020, ANDERSSON sent a letter responding to the issues raised in the reservation of rights letter. ECF no. 151-26. It is vital to note ANDERSSON's letter did not dispute any of the facts detailed in the reservation of rights letter. *Id*. Instead, ANDERSSON's letter merely objected to the coverage conclusions stated therein. *Id*. ANDERSSON explained that the weather condition prevented him from remaining within the Policy's navigational limits and asserted that Naranjo's seasickness did not render the Vessel unseaworthy because "I am capable of sailing Melody singlehanded." *Id*.[1] There is nothing in this letter suggesting ANDERSSON thought that GLI's facts were wrong or that further investigation would have uncovered different facts which changed GLI's coverage decision.

---

[1] This is also relevant to this Court's claim, in another part of this litigation, that "GLI also should have known that at some point during that three-day voyage, Andersson would [have] to be relieved[.]" ECF no. 60, p. 6. If ANDERSSON was capable of navigating the Vessel singlehanded, then there is no basis for asserting that GLI should have known that ANDERSSON would have to be relieved.

In response to this letter, Ball sent an email to Concept dated January 31, 2020 explaining how this objection from ANDERSSON, including all the facts asserted therein, did not change any of his conclusions. ECF no. 151-27. It is vital to note that Ball accepted entirely the facts detailed by ANDERSSON in his letter. *Id*. The only thing Ball stated in his email was that the facts related by ANDERSSON, which he believed entirely, did not change his conclusions. *Id*. This Court's decision cites no part of the record indicating that Ball or GLI had an improper motive in believing the facts asserted by ANDERSSON.

Based on these facts, GLI made the decision to deny coverage and file the present declaratory judgment action. ECF no. 1.

During the course of discovery, absolutely nothing came to light which changed any of the facts on which GLI relied at summary judgment. On summary judgment, the parties agreed completely as to the Vessel's course. ECF no. 97 and ECF no. 107. Moreover, there was no dispute that the Vessel steered a course which took it outside the navigational limits which GLI believed were applicable when it denied coverage. *Id*. The only dispute was a legal one, whether Aves Island expanded the Policy's navigational limits beyond those understood by GLI. *Id*. On summary judgment, the parties agreed completely that the Vessel did not have current accurate charts for Boca Chica. *Id*. The only dispute was a legal one, whether a vessel lacking such charts was unseaworthy for insurance purposes. *Id*.

The documentary evidence presented at summary judgment shows that Ball obtained all the facts on which GLI based its coverage decision from ANDERSSON himself. These facts show that, with exception of the revelation as to Naranjo's actual condition (which is still a disputed point), absolutely nothing changed between the time of the coverage denial and the filing of summary judgment motions. With respect to the navigational limits warranty, GLI's coverage

decision was based entirely on ANDERSSON's account as to the Vessel's final voyage.  ECF no. 114.  This Court was only able to issue a summary judgment decision because there was no dispute as to the facts collected by GLI during its claim investigation.  ECF no. 124.  GLI did not move for summary judgment on the navigational limits warranty, not because of any dispute of fact or change in the facts which arose during discovery, but because of a legal dispute as to the inclusion of Aves Island in the Policy's navigational limits.  ECF no. 107 and ECF no. 114.   With respect to the seaworthiness of the Vessel, GLI's coverage decision was based entirely on ANDERSSON's statements that he had no current, accurate charts of Boca Chica.  ECF no. 98.  This Court was only able to issue a summary judgment decision because this Court found that there was no dispute as to the facts collected by GLI in the course of its claim investigation.  ECF no. 124.  GLI lost summary judgment on this issue, not because of any dispute of fact or change in the facts which arose during discovery, but because this Court found that lacking charts did not render a vessel unseaworthy for purposes of insurance coverage.  *Id*.  There is nothing in this Court's decision which cites to any part of the record in which the course of the Vessel was ever the subject of a factual dispute.

Therefore, GLI asks that this Court reconsider its assertion, made without citation to any fact on the record, that further factual investigation would have made a difference either to the actual course of the Vessel or the absence of charts which was undisputed on summary judgment.

### 2. "[]ANDERSSON sent GLI a letter on January 16, 2020… addressing GLI's concerns about the seaworthiness such as the mistaken belief that there were no paper charts on board."  ECF no. 183, p. 12

There is no reference whatsoever in ANDERSSON's letter of January 15, 2020, which was emailed to Ball on January 16, 2020, to the Vessel's paper charts.  Email of January 16, 2020 attached hereto as Exhibit 1.  Therefore, when GLI's claims agent asked Ball to comment, Ball's

4

response merely explained the impact of the absence of charts. Ball's email of January 31, 2020 is attached hereto as Exhibit 2. There is nothing to support this Court's assertion that ANDERSSON informed GLI that it was wrong as to which paper charts were on board the Vessel. There is no citation to the record.

### 3. "GLI… did not attempt to contact any other witnesses to clarify the facts, especially Naranjo, whose seasickness…"

GLI contends that this is a manifest mistake as to the undisputed record. First, this Court's decision merits reconsideration because, besides Naranjo, there were no "other witnesses" from whom to obtain information which might "clarify the facts" concerning the Vessel's final voyage. The undisputed facts are very clear that ANDERSSON and Naranjo were the only witnesses with any information concerning the navigation of the vessel and its seaworthiness. ECF no. 98 and ECF no. 107. Nobody disputes that they were the only people on board the Vessel. This is confirmed by ANDERSSON's Rule 26 disclosures. The only two witnesses disclosed as having any information about the Vessel's final voyage are ANDERSSON and Naranjo. Exhibit 3. Therefore, it was clear factual error for this Court to fault GLI for not contacting "any other witnesses."

Second, this Court's statements as to fact merits reconsideration because Ball had obtained all the necessary information concerning Naranjo's condition from his interview of ANDERSSON, and never had any reason to suspect that ANDERSSON was not telling the truth as to Naranjo's condition or his operation of the Vessel. In fact, even at this time ANDERSSON maintains that Naranjo did not operate the Vessel. ECF no. 58, p. 5 (fn. 2). Nothing in this Court's decision points to any fact on the record showing that believing ANDERSSON's account of the Vessel's final voyage is a fact demonstrates either bad faith or an improper purpose by GLI in its handling of the claim.

Third, this Court's decision merits reconsideration because it is false that Ball never attempted to obtain information from Naranjo. The undisputed facts from Ball's reports show that Naranjo disappeared from Aruba before Ball had even arrived. ECF no. 151-14, p. 16.

### 4. "Had GLI used minimal effort and expense, it could have instructed Ball to investigate further into the weather…"

GLI contends that it is a manifestly incorrect statement of the undisputed record. This Court's decision merits reconsideration because the undisputed record shows that Ball did investigate the weather. The contention that Ball should have conducted more investigation into the weather is directly contradicted by the undisputed facts on the record. At his deposition, which is on file with this Court as ECF no. 107-5, Ball testified that he did independently verify the weather conditions. He testified, "And the -- the weather station I pulled this from is Bonaire. I know they left from Aruba, but Bonaire is the -- is the, sort of, next island to the east, so it's what they would've encountered shortly into the voyage as they got a little bit further form Aruba had they headed east." ECF no. 107-5, p. 242-43. Therefore, it is clear that this Court's statement as to the facts is wrong and that GLI used more than "minimal effort and expense" to independently verify the weather.

### 5. "[W]hether Andersson's determining that heading straight downwind in a catamaran in strong winds (which would have been required to return to Aruba) would have proven disastrous and possibly cause him to capsize."

GLI contends that it is an incorrect statement of the undisputed record. This Court's decision merits reconsideration because this Court has made a mistake as to when evidence was presented pertaining to the possible capsizing of the Vessel. First, the documentary evidence shows that Ball obtained evidence from ANDERSSON pertaining to the weather conditions during the Vessel's final voyage. ECF no. 98-7. Moreover, Ball made his own independent evaluation of the sailing conditions based on the weather data he gathered. ECF no. 107-5, p. 242-43.

6

Second, in his letter of January 15, 2020, ANDERSSON never alleged that steering downwind would force him to capsize. Rather, he merely stated that maintaining his intended course to the **_EAST_** would put the Vessel in danger. Ex 1, p. 2. It was not until ANDERSSON's deposition eighteen months later, on June 4, 2021, that ANDERSSON disclosed that he feared that sailing South and returning to Aruba would cause the Vessel to capsize. ECF no. 107, p. 98-4, p. 45.

In addition, nine months after ANDERSSON's deposition, ANDERSSON's own expert, Otto Gieger, testified that there was no reason that the weather would have prevented ANDERSSON from sailing South and returning to Aruba. ECF no. 162-8. p. 11 of 22. Obviously, ANDERSSON's testimony during discovery contradicted the facts ANDERSSON gave to Ball during the investigation and the testimony of his own expert. But, based on the testimony of ANDERSSON's expert, it is clear that it was entirely reasonable for Ball to rely on the initial facts relayed by ANDERSSON during the investigation, as well as his own independent investigation of the weather conditions.

Therefore, there is no evidence that Ball was not diligent in gathering data pertaining to the sailing conditions, or that further investigation would have uncovered different facts.

### 6. "Other than consulting their attorney's to obtain _APPROVAL_ to deny the claim…"

GLI contends that it is an incorrect statement of the undisputed record. This Court's decision merits reconsideration because there is absolutely nothing indicating that GLI sought "approval" from its attorneys to deny coverage for ANDERSSON's claim. There is no evidence whatsoever, and this Court cites to none, that GLI's attorneys "approved" anything. GLI only

sought the opinion of outside coverage counsel in February 2020 after conducting its investigation and gathering all the facts which implicated coverage issues.[2]

Moreover, as noted above, those facts remained undisputed throughout this litigation. On summary judgment, there was no dispute as to the course of the Vessel, only a legal dispute as to whether Aves Island should be included in the Policy's navigational limits. ECF no. 107 and ECF no. 114. On summary judgment, there was no material dispute that the Vessel lacked current, accurate charts for Boca Chica, only a legal dispute as to whether the known deficiencies in those charts rendered the Vessel unseaworthy at the inception of the Policy.

Even worse, this Court has drawn exactly the wrong factual conclusion from GLI's decision to seek the opinion of outside coverage counsel. It is black letter law that one way an insurer shows good faith is by seeking, and acting upon, the opinion of outside coverage counsel. *Harriman v. Associated Industries Insurance Company, Inc.*, 91 F.4th 724, 730 (4th Cir.2024),[3] *Perkins v. Employers Mutual Casualty Company*, 507 F.Supp.3d 1172 (D.Ariz.2020)[4]. However, perverting that principle, this Court is holding GLI liable for seeking, and acting upon, the advice of outside coverage counsel.

Throughout this country, states dealing with bad faith insurance claims have held that seeking, and acting upon, the opinion of outside coverage counsel demonstrates the insurer's good faith:

- "[R]eliance on the advice of informed counsel has often been sufficient in itself to establish good faith or to rebut a claim of bad faith. There is no indication in the record that the insurers were not entitled to rely on their lawyer's advice. It is a reasonable inference from these facts that the insurers' ***complaint for a***

---

[2] If the Court will permit GLI to file the relevant portion of the assignment email without waiving the attorney-client privilege, the undersigned can file a redacted copy for the sole purpose of establishing the date on which the matter was referred to outside coverage counsel for a legal opinion.
[3] Applying South Carolina's cause of action for breach of the covenant of good faith and fair dealing, which is functional identical to a Massachusetts bad faith claim.
[4] Applying Arizona's bad faith statute, which is functionally identical to the Massachusetts bad faith statute. A.R.S. § 20-461.

> ***declaratory judgment*** was filed with the aim of resolving the doubt raised by their lawyer's advice." *Davis v. Cotton States Mut. Ins. Co.*, 604 So.2d 354, 359 (Alab.1992) [internal quotations and citations omitted] [emphasis added].

- The insurer's "reliance on the advice of its counsel was evidence of good faith." *Bohemia, Inc. v. Home Ins. Co.*, 725 F.2d 506, 512 (9th Cir.1984) (applying California's common law tort claim for breach of the covenant of good faith and fair dealing).

- An insurer's "good faith reliance upon the advice of counsel may also prevent the imposition of punitive damages." *Gorman v. Southeastern Fidelity Ins. Co.*, 775 F.2d 655, 659 (5th Cir.1985).

- "[A]n insurer acts in good faith… [when] acting upon the opinion of a reasonably qualified legal advisor,[.]" *Davy v. Pub. Nat. Ins. Co.*, 181 Cal.App. 2d 387, 396; 5 Cal.Rptr. 488 (Ct. App. 1960) (applying California's common law tort claim for breach of the covenant of good faith and fair dealing).

Applying the Massachusetts bad faith statute, this Court has previously held on multiple occasions that "[w]hen an insurer reasonably relies on a diligent, good faith evaluation by its counsel, such reliance is evidence of the insurer's good faith." *Peckham v. Continental Cas. Ins. Co.*, 997 F.Supp. 73, 80 (D.Mass.1989). An insurer's "reliance on the advice of counsel provides further evidence that its decision was made in good faith." *Stormo v. State National Insurance Company*, 2021 WL 11652293, p. 14 (D.Mass.2021).

### 7. Race to the Courthouse?

Finally, this Court made a factual mistake by not making any finding as to the facts which are actually relevant to an accusation that a party "raced to the courthouse."

It is absolutely true that GLI elected to invoke its right under federal admiralty law to file a declaratory judgment action. ECF no. 1. The only difference this made in the litigation is that GLI, as the plaintiff, was allowed to invoke admiralty jurisdiction and request a bench trial.[5] An

---

[5] Contrary to the mistake pled in GLI's complaint for declaratory judgment action (ECF no. 1, ¶5), ANDERSSON was not a resident of Massachusetts. However, ANDERSSON responded to GLI's declaratory judgment action in Massachusetts without objection. ECF no. 9. In fact, ANDERSSON's responsive pleading stated, "Andersson

9

election which this Court expressly found was GLI's right. ECF no. 29. As was the case in numerous courts before it, this Court ruled that the filing of a declaratory judgment action which invokes admiralty jurisdiction and requests a bench trial is absolutely permissible. *Id*.[6]

There is no requirement, under either federal law or Massachusetts law, that Litigant #1 (such as GLI in the present matter) has to give warning to Litigant #2 (such as ANDERSSON in the present matter) of suit so that Litigant #2 can win the race the courthouse and file first. Without a factual finding such as one discussed below, this Court's decision is tantamount to a statement that ANDERSSON had more right to file suit first that did GLI. There is no caselaw in this Circuit supporting such a blatantly unfair contention, that certain litigants have more rights than others. Certainly, this Court cited none.

Also, multiple courts in this district have held that there is no "race to the courthouse" when Litigant #1, anticipating litigation, elects to file first and invoke its rights under federal law. Rather, a "race to the courthouse" only occurs in two factual situations:

(1) Litigant #1 "misleads" Litigant #2 by making an affirmative promise not to file suit first, which leads Litigant #2 to deliberately forego filing its own suit.

(2) After receiving notice that Litigant #2 intends in the near future to file suit, Litigant #1 files its own suit preemptively.

For instance, this precise issue arose in the case of *Transcanada Power Marketing, Ltd. v. Narragansett Elec. Co.*, which concerned a dispute between distributors of electrical power. 402 F.Supp.2d 343 (D.Mass.2005). When the parties disagreed over the interpretation of the terms of

---

voluntarily submits to the jurisdiction of this Court." *Id*, at p. 1. ANDERSSON never made any request for a change of venue to the District of New Jersey, nor would GLI have objected to one. ECF no. 9, p. 5.

[6] In opposition to GLI's motion to strike his jury demand, ANDERSSON dedicated multiple pages to accusing GLI of "racing" to the courthouse. ECF no. 18. Nonetheless, this Court rightly ignored that accusation entirely without even deigning to mention it. ECF no. 29.

their contract, the wholesaler elected not to wait for the conclusion of negotiations. *Id*. Moreover, just like GLI in the present matter, the wholesaler did not give the retailer specific warning that it intended to file suit. *Id*. Instead, the wholesaler filed an action in the federal court in Massachusetts. *Id*, at 347. Shortly thereafter, the retailer filed its own suit in federal court in Rhode Island and asked the Massachusetts court for a stay. *Id*. First, the district court in Massachusetts held that there was no "race to the courthouse" because the defendant had never made its own threat to bring suit. *Id*. "[T]here can be no race to the courthouse when only one party is running." *Id*, at 348, *quoting*, *Learning Network, Inc. v. Discovery Communications, Inc.*, 11 Fed.App'x 297, 301, (4th Cir.2001). Second, the district court held that the plaintiff did nothing to mislead the defendant, neither promising not to file suit nor negotiating in bad faith. *Id*. Therefore, the district court held that there was no "race to the courthouse" and that the party to file first was entitled to choose the forum and to elect the procedures which come with being the plaintiff. *Id*.

Similarly, the recent case of *LeMaitre Vascular, Inc. v. Leagans* was a contract employment dispute concerning a non-compete clause. 2021 WL 9649663 (D.Mass.2021). Before any negotiations had taken place, and before any suit had been threatened by the employee, the employer filed its suit in the District of Massachusetts. *Id*. The next day, the employee filed his suit in the District of South Carolina and asked for a stay in the District of Massachusetts, alleging that the employer "raced to the courthouse" in Massachusetts. *Id*. Applying the test noted above, the District of Massachusetts rejected that allegation that the employer, merely by electing to invoke its rights and file first, "raced to the courthouse" in a way that was improper. First, the District of Massachusetts found no evidence that the employer's election to file suit was based on a threat by the employee to file his own suit. *Id*, at 2. Therefore, the employer never "raced" to

preempt the employee's threatened suit. Second, the District of Massachusetts found no evidence that the employer ever misrepresented that it "would abstain from litigation." *Id*. Therefore, the employer never "did anything improper or misleading." *Id*.

To give another example, in the case of *OneBeacon America Ins. Co. v. Celanese Corp.*, the District of Massachusetts dealt with a dispute like the present one, in which an insurer filed a declaratory judgment action to determine coverage. 2015 WL 1962168 (D.Mass.2015). However, unlike GLI in the present case, the insurer in *OneBeacon* filed its declaratory judgment action eight days after the insured had filed its breach of contract suit in federal court in Texas. *Id*, at 5-6. When the insured sought to stay the insurer's declaratory judgment action, the federal court in Massachusetts looked specifically at the circumstances which motivated the insured to file first in Texas. The federal court in Massachusetts noted that the insurer neither threatened suit first, nor did the insured do anything to mislead the insurer into delaying the filing of its own suit. *Id*, at 6. Therefore, there was no "race to the courthouse" and the insured's election to file first in Texas was respected. *Id*, at 6.

In the cases where Litigant #1 was criticized for "racing the courthouse," Litigant #1 was found at fault because the court made an express finding that the Litigant #1 either "misled" Litigant #2 by making a promise not to file suit or Litigant #1 started "racing" immediately after Litigant #2 threatened suit.

Based on the rule stated in these case, this Court's accusation that GLI "raced to the courthouse" is based on two manifest factual errors:

(1) First, this Court never pointed to any fact on the record showing that GLI ever "misled" ANDERSSON by promising not to file its own suit. Concerned that a coverage issue had arisen, GLI invoked its rights to file a declaratory judgment action in federal court. GLI has exactly the same rights before this Court as ANDERSSON. There is nothing on the record which shows that GLI ever promised that it would not file suit. Yet, this Court's decision is

12

> tantamount to asserting that GLI was obligated to sit on its own rights, ceding its rights under the declaratory judgment statute to ANDERSSON, and that only ANDERSSON was entitled to choose the time, place, and procedures of the impending litigation.
>
> (2) Second, this Court never pointed to any fact on the record showing that ANDERSSON threatened suit against GLI, prompting GLI to preemptively file its declaratory judgment action before ANDERSSON could file his own threatened action.[7] On the contrary, GLI made the decision which is allowed by the federal declaratory judgment remedy, which is to act as a plaintiff, make a jurisdictional choice, and take advantage of the procedures which naturally flow from the election of admiralty jurisdiction. Had ANDERSSON threatened suit first, then GLI might have been blocked from preempting that decision. But, short of that, there is no rule of law which says that a litigant like GLI is forbidden from deciding for itself when it shall resort to litigation.

Next, there is no basis for this Court to criticize GLI's decision to vindicate its rights by means of the declaratory judgment remedy. "[A] declaratory judgment suit by an insurer is not a mere race to the courthouse, but is a normal and orderly procedure." *Royal v. Deep Sea*, 2005 A.M.C. 640 (S.D.N.Y.2004) [internal citations and quotations omitted]. *See also*, *Markel American Ins. Co. v. Linhart*, 2012 WL 2930207 (E.D.N.Y.2012), *St. Paul Fire and Marine Ins. Co. v. Holiday Fair, Inc.*, 1996 WL 148350 (S.D.N.Y.1996). "Submitting a coverage dispute issue to a court for interpretation in a declaratory judgment action is a prudent, reasonable step toward the resolution of a legitimate dispute over a coverage term or exclusion." *State Farm Fire & Casualty Company v. Inevat, LLC*, 2018 WL 2768661, p. 2 (fn. 25) (D.Utah.2018) [internal citations and quotations omitted].

In addition, there is one more implied issue raised by this Court's decision which must be briefly addressed. This Court made no finding whatsoever that GLI ever did anything improper,

---

[7] If this Court had asked for such evidence, GLI could have filed the attached document, which is the only reference anywhere on the record to lawyers. On December 28, 2019, in response to GLI reservation of rights letter, ANDERSSON responded that he would be conferring with his lawyer. ANDERSSON's email of December 28, 2019 is attached hereto as Exhibit 5. **TWO MONTHS LATER**, without hearing any whatsoever regarding filing a lawsuit, GLI filed the present declaratory judgment action. This Court's decision cites no fact on the record indicating that a two-month crawl towards litigation is a "race to the courthouse."

13

either by promising not to file suit or by filing before ANDERSSON filed his own threatened suit. The sole basis for this Court's decision is the bare fact that GLI elected to file first. Therefore, this Court's decision suggests that the undersigned should have advised his client, "Don't invoke your rights under federal law. Although it is undoubtedly your right under the federal declaratory judgment statute, the court won't like you if you invoke your rights. You are a disfavored litigant. Instead, you have to sit on your rights and allow ANDERSSON to invoke his rights first. Of course, the remedy of a bench trial in admiralty is two centuries old. But, ANDERSSON's rights have priority." That's malpractice.

Moreover, this Court has already ruled that GLI is entirely within its rights to file a declaratory judgment action and request a bench trial. *Great Lakes Insurance SE v. Andersson*, 525 F.Supp.3d 205 (D.Mass.2021). Surely, this Court had no improper purpose of its own when it granted GLI's motion to strike ANDERSSON's jury demand.

The cases above make clear that it is perfectly permissible for Litigant #1 to decide to file its own suit first for the purpose of making procedural elections which are its right. But, when Litigant #2 starts moving towards the court, it is impermissible for Litigant #1 to trip Litigant #2. There is no evidence on the record that GLI did any such thing.

**8. Reservation of Rights Dated December 27, 2019**

It appears that the contents of the Reservation of Rights Letter sent on December 27, 2019 have created some confusion. As this Court is aware, an insurer is under a strict obligation to include in its initial reservation of rights letter all the possible bases for coverage denial, even those which are not based on definitely established facts. For instance, that is why the letter includes a reference to the possibility that Naranjo's seasickness might have rendered the Vessel unseaworthy. Of course, the absence of information directly from Naranjo made this speculative.

But, under the relevant legal standard, GLI was still obligated to include it. Moreover, failure to raise an issue in a timely manner can even result in a litigant being denied leave to amend its declaratory judgment action. *Great Lakes Insurance SE v. Andersson*, 338 F.R.D. 424 (D.Mass.2021). For precisely this reason, GLI was obligated to include bases for denial which it did not ultimately carry all the way to declaratory judgment, such as the possibility that Naranjo's condition might render the Vessel unseaworthy. It cannot possibly be bad faith to take action required by the issuance of a reservation of rights letter.

### 9. **GLI's Coverage Decision accounted for ANDERSSON sailing as far west on Ponce, Puerto Rico. ECF no. 183, p. 12 (fn. 7).**

GLI made a legal mistake in its conclusion that Aves Island was not within the Policy's navigational limits. However, this Court's decision contains no citation to the record indicating the basis for the assertion that inadequate investigation caused GLI to somehow mistake the course of ANDERSSON's vessel. The undisputed record shows that GLI's only mistake was a legal one, misjudging whether Aves Island was included in those limits. ECF no. 33, p. 2. The undisputed record, which is not contradicted by act fact noted in this Court's decision, shows that Ball's expert opinion as to the course of the Vessel on its final voyage was took into account that ANDERSSON sailed as far west as Ponce, Puerto Rico. As part of his expert report, Ball produced a map showing the course of ANDERSSON's vessel based on the facts collected in his investigation. The map is attached hereto as Exhibit 4.[8] That map also showed the Policy's navigational limits as GLI thought those to be when it denied coverage. The course plotted on the map in green clearly shows that Ball accounted for ANDERSSON sailing as far East as Ponce, Puerto Rico. In fact, the map

---

[8] Due to the limitations of the ECF system, it was necessary to file a low resolution version of the map. Ex 4. A high resolution version was produced for counsel for ANDERSSON and can be provided to this Court upon request.

shows that ANDERSSON made his turn to the Northwest at precisely 67° 15' west longitude, which is precisely the longitude of Ponce, Puerto Rico.

Nor is there any basis in the record for this Court's claim that there was ever any "potential" that this course would have kept ANDERSSON within the navigational limits. As the map shows, based entirely on ANDERSSON's account of his voyage, even granting that the Vessel sailed as far East as Ponce, Puerto Rico, the Vessel only stayed within the Policy's navigational limits because the inclusion of Aves Island brought those limits 3° west. Without the inclusion of Aves Island, there was no "potential" whatsoever that the Vessel stayed within the limits. The Vessel would have had to sail 2° 15' further East.

## Conclusion

This Court's summary judgment decision includes several manifest factual errors, and points to no fact which, had it been uncovered during GLI's investigation, would have changed the legal contentions of either party. Moreover, this Court made no factual findings which are actually relevant to the legal standard for finding that GLI "raced to the courthouse." This Court's decision is a catalogue of "after the fact" critiques of the claim handing which would have made no difference whatsoever to the facts which impacted this Court's own coverage decision. Therefore, for the reasons detailed herein, GLI asks that this Court reconsider the factual deficiencies in its summary judgment decision.

WHEREFORE, GLI asks that this Court reconsider the factual deficiencies upon which it found that GLI acted in bad faith and award all such further relief as may be appropriate in the premises.

Dated: April 8, 2024
Brookline, Massachusetts

        THE GOLDMAN MARITIME LAW GROUP
        Attorneys for Plaintiff
        233 Harvard Street
        Suite 211
        Brookline, MA 02446
        Tel (617) 566-4200
        Cel (617) 671-8657
        Fax (617) 566-4292

        By:    /s/ Michael I. Goldman
              MICHAEL I. GOLDMAN ESQ.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Court using the CM/ECF System which will provide and electronic notice to all counsel, of record.

Dated: April 8, 2024
Brookline, Massachusetts

        THE GOLDMAN MARITIME LAW GROUP
        Attorneys for Plaintiff
        233 Harvard Street
        Suite 211
        Brookline, MA 02446
        Tel (617) 566-4200
        Cel (617) 671-8657
        Fax (617) 566-4292

        By:    /s/ Michael I. Goldman
              MICHAEL I. GOLDMAN ESQ.